Rev. 3/19

_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WASHINGTON

FEB 11 2025    MH

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                    DEPUTY

Wayne Hollaus,    47120-510
*Plaintiff's full name and prisoner number*

Plaintiff,

v.

Kevin Posalski, Maria Dy, Ashley Martin, and Howard Barron, sued in their individual capacities,

_____

*Defendant's/defendants' full name(s)*

Defendant(s).

(If you cannot fit all of the defendants' names in the space provided, please write "see attached" in the space above and attach additional sheets of paper, as necessary, with the full list of names. The names listed here must be identical to those in Section II. Do not include addresses here. **Individuals whose names are not included in this section will not be considered defendants in this action.**)

Case No. ___2:25-CV-00268-KKE-GJL___

(leave blank – for court staff only)

### PRISONER CIVIL RIGHTS COMPLAINT

Jury Demand?
■ Yes
No

## WARNINGS

1.     Do not use this form if you are challenging the validity of your criminal conviction or your criminal sentence. If you are challenging your conviction or sentence, or if you are seeking restoration of good-time credits that would shorten your sentence, you must file a Petition for Writ of Habeas Corpus. If you use this form to challenge your conviction or sentence, you risk having your claim dismissed. Separate forms are available for filing a habeas petition.

2.     Under the Prison Litigation Reform Act ("PLRA"), you are required to exhaust all remedies in your institution's grievance system that are available to you before filing suit. This generally means that you must file a grievance and, if it is denied, appeal it through all available levels of review. Your case may be dismissed if you fail to exhaust administrative remedies, unless the administrative grievance process was not "available" to you within the meaning of the PLRA. You are not required to plead or show that you have exhausted your claim in this complaint.

3.    Please review your complaint carefully before filing. If your case is dismissed, it may affect your ability to file future civil actions while incarcerated without prepaying the full filing fee. Under the PLRA, a prisoner who has had three or more civil actions or appeals dismissed as frivolous, malicious, or for failure to state a claim cannot file a new action without first paying the full filing fee, unless the prisoner is in imminent danger of serious bodily injury.

4.    Under Federal Rule of Civil Procedure 5.2, papers filed with the court, including exhibits or attachments to a complaint, may not contain certain information, which must be modified as follows:

Do not include:

- a full social security number
- a full birth date
- the full name of a minor
- a complete financial account number

Instead, use:

→ the last four digits
→ the birth year
→ the minor's initials
→ the last four digits

5.    You may, but do not need to, send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint. Any documents you submit *must relate directly to the claims you raise in this lawsuit*. They will become part of the court record and *will not be returned to you.*

---

## I.    PLAINTIFF INFORMATION

Wayne Hollaus
Name (Last, First, MI)                                      Aliases/Former Names

47120-510
Prisoner ID #

Federal Correctional Complex, Lompoc II
Place of Detention

3901-Klein Blvd.
Institutional Address

Lompoc,                          CA                          93436
County, City                     State                       Zip Code

*Indicate your status:*

☐  Pretrial detainee                      ☐  Convicted and sentenced state prisoner
☐  Civilly committed detainee             ☒  Convicted and sentenced federal prisoner
☐  Immigration detainee

## II.    DEFENDANT INFORMATION

*Please list the following information for each defendant.  If the correct information is not provided, it could delay or prevent service of the complaint.  Make sure that the defendant(s) listed below are identical to those contained in the caption on the first page of the complaint. Attach additional sheets of paper as necessary.*

Defendant 1:    Posalski, Kevin
            Name (Last, First)

            Acting Health Service Adminstrator and Nurse (at time in question)
            Current Job Title

            SeaTac, FDC, 2425 South 200th Street
            Current Work Address

            Seattle,                    WA              98198
            County, City                State           Zip Code

Defendant 2:    Dy, Maria
            Name (Last, First)

            Physician (at the time in question)
            Current Job Title

            SeaTac, FDC, 2425 South 200th Street
            Current Work Address

            Seattle,                    WA              98198
            County, City                State           Zip Code

Defendant 3:    Martin, Ashley
            Name (Last, First)

            Correctional Officer (at the time in question)
            Current Job Title

            SeaTac, FDC, 2425 South 200th Street
            Current Work Address

            Seattle,                    WA              98198
            County, City                State           Zip Code

II. DEFENDANT INFORMATION (additional)

Defendant 4: Barron, Howard
Warden, FDC Seatac (at the time in question)
Seatac FDC, 2425 South 200th Street
Seattle, WA 98198

III.   STATEMENT OF CLAIM(S)

*In this section, you must explain what you believe each defendant did to violate your civil rights, and if you know, identify the federal statutory or constitutional right you believe was violated.*

*If you believe the defendant(s) violated your civil rights in more than one way, explain each violation under a different count. For example, if you believe you received constitutionally inadequate medical care and your religious rights were substantially burdened, include one claim under "Count I" (i.e., medical) and the other claim under "Count II" (i.e., religion).*

*Number your paragraphs. For example, in Count I, paragraphs should be numbered 1.1, 1.2, 1.3, etc., and in Count II, paragraphs should be numbered 2.1, 2.2, 2.3, etc. The first two paragraphs of each Count have been numbered for you.*

*If you have more than three counts, attach additional pages and follow the same format for each count.*

*If you attach documents to support the facts of your claim(s), you <u>must</u> specify which portion of the document(s) (i.e., page and paragraph) you are relying on to support the specific fact(s) of your claim(s). <u>If you do not specify the portion of the supporting document(s), the Court may disregard your document(s)</u>.*

<u>COUNT I</u>

*Identify the first right you believe was violated and by whom:*

1.1  Plaintiff's Fourteenth and Eighth Amendment rights to medical care, as a detainee and later as a convicted prisoner, were violated by Defendants Posalski, Dy, Martin, and Barron.

*State the <u>facts</u> of your first claim below. Include all the facts you consider important. Be specific about dates, times, locations, and the names of the people involved. Describe exactly what each specific defendant did or failed to do that caused you injury or violated your rights, and include any other facts that show why you believe what happened was wrong. If you need additional space, you may attach extra sheets.*

1.2  Plaintiff has sleep apnea, requires a CPAP machine, and had been using a CPAP machine prior to arriving at the FDC.

1.3  Sleep apnea is a serious health condition which if untreated can raise one's risk of high blood pressure, heart disease, and diabetes. (https://webmd.com/sleep-disorders/sleep-apnea/sleep-apnea).

1.4  Plaintiff suffers from allergies and sinus problems. Plaintiff requires a full face mask when he is suffering from these problems because he cannot breathe through his nose, making his nose mask insufficient.

1.5 Plaintiff had previously taken a Canadian Government administered CPAP test which showed that on average Plaintiff stops breathing 32 times per hour.

1.6 Severe sleep apnea is defined as when apneic events happen more than 30 times per hour. (WebMD, Id.).

1.7 Before arriving at the FDC, Plaintiff had been suffering from joint issues, mostly in his right knee, right ankle, and back issues stemming from his Plantar Fasciitis.

1.8 Before arriving at the FDC, Plaintiff was taking medication for blood pressure, (             ., and COPD/Asthma. All medication was prescribed by his Canadian doctor, Dr. Mark Gulka.

1.9 Plaintiff arrived at the FDC on March 2, 2023 with both a full face XL CPAP mask, a smaller nose mask, his CPAP machine, a scandisk insert in his CPAP machine which keeps track of his breathing, soft shoes, orthotic insoles, and his doctor prescribed medication, all of which he brought with him from Canada.

1.10 During intake shortly after arrival, officers of the FDC's Recieving and Discharge Department (R&D) told Plaintiff he could only have one CPAP mask, presumably citing their understanding of FDC policy.

1.11 Plaintiff protested the confiscation and insisted on brining both of his masks in, but he was only allowed to bring his nose mask into the housing unit.

1.12 The R&D officers confiscated Plaintiff's full face mask and the scandisk insert of his CPAP machine.

1.13 The R&D officers also confiscated his soft shoes and orthotic insoles.

1.14 The R&D officers also confiscated his doctor prescribed medication that he had arrived with.

1.15 Plaintiff's medical screening at intake consisted of a brief interview, a tuberculosis test, and a pulse oximeter reading. There was no physical examination provided.

1.16 On March 13, 2023 Plaintiff submitted a hand written kite requesting a replacement for his full face XL CPAP mask, orthotics, his medication, including his blood pressure pills, and for a physicians appointment.

1.17 This kite was responded to by Officer Satalino on April 7, 2023 only stating that Plaintiff had "an upcoming appt[sic] with a provider."    (1)

*State with specificity the injury, harm, or damages you believe you suffered as a result of the events you described above in Count I. Continue to number your paragraphs.*

1.124 Plaintiff's right to medical care was constitutionally protected under the Due Process Clause of the 14th Amendment while he was a pre-trial detainee, and under the 8th Amendment's protection against cruel and unusual punishment after he was sentenced as guilty in late September, 2023.

1.125 The failure of Defendant Posalski, as AHSA, to provide Plaintiff with a full-face mask for his CPAP machine in the 8 months Plaintiff was at the FDC, and delaying 6 months to provide a pass to have a mask sent in(2)

(1) See Page 5, additional pages 1-8
(2) See Page 5, additional pages 9-10

Page 5 of 9

**STATEMENT OF CLAIMS** (continued from page 5)

1.18 For about 3 weeks after arriving at the FDC Plaintiff had no medication at all.

1.19 Sometime around March 23, 2023 Plaintiff was prescribed Amlodipine 5mg to be taken each morning for blood pressure support, and given an Asmanex Twisthaler (Mometasone Furoate) for his asthma.

1.20 Even after taking 5mg of Amlodipine daily, Plaintiff felt that his blood pressure was still consistenly high, and much worse than it was before he arrived at the FDC when he was on his previous blood pressure medication.

1.21 On March 28, 2023 Plaintiff sent an electronic kite to Health Services regarding his confiscated full-face CPAP mask stating that "I need this for when I have sinus issues and cannot use my nose mask which is a regular occurance with my lung issues and my asthma."(All kites spelled in context.)

1.22 On the same kite, Plaintiff requested "a pair of medically prescribed orthotics and proper physician approved footwear," citing his Plantar Faciitis. He stated that "I am in constant pain due to wearing insuffecient footware supplied by the institution (crocs). I am experiencing pain and swelling in my right foot and pain in my right knee at this time, which in time, will start affecting my hips, and then back," adding that his family doctor and chiropractor had prescribed orthotics and medical shoes "for many years now."

1.23 In the same kite, Plaintiff stated that "If you need papers signed to access my medical records to fulfill my request, I am more than willing to sign forms."

1.24 On April 3, 2023 Plaintiff sent a kite to Health Services, addressed to "Polowski," of which he meant Defendant Posalski stating that "I have seen other inmates CPAP provided by the state that includes many different sizes and types of masks, so I would appreciate if you could supply me a full mask."

1.25 On the same kite, Plaintiff again grieved his confiscated orthotics and soft shoes, stating "[s]ince my arrival, my right foot has swollen up as well as my right knee."

1.26 Also on the same kite Plaintiff mentioned that he did start recieving some medication 3 weeks after arrival, but has not had a physical exam and requested to see a physician.

1.27 On April 12, 2023 Plaintiff again sent a kite to Health Services requesting a proper physician's examination and re-evaluation of his blood pressure medications.

1.28 On April 14, 2023 Plaintiff sent a kite to Health Services requesting a "[d]octors visit to do a physical exam that should have been done before giving medications or being left in the facility with no medical attention given."

1.29 On April 17, 2023 Plaintiff sent a kite to Health Services stating "I was having higher than usual blood pressure and after asking to check my BP, I was told by pill line to just lay down and drink water."

1.30 On April 19, 2023 Plaintiff sent a kite to Health Services requesting orthotics, stating this is an "immediate need" and that he is in "excruciating pain" from not having them, and a physicians exam at sick-call to go over his conditions, including sleep apnea, and so that Plaintiff "would be able" to sign a waiver for his "medical records."

1.31 Plaintiff continually pressed the FDC staff for a solution to these issues, and for a physicians examination, in numerous other kites, only a fraction of which are detailed here.

**STATEMENT OF CLAIMS** (continued from Page 5, additional page 1)

1.32 Sometime in late April or early May, Defendant Posalski signed off on a soft shoe pass for the Plaintiff.

1.33 On May 8, 2023 Plaintiff received orthotic insoles.

1.34 On May 17, 2023 Plaintiff sent a kite to Health Services requesting an "ankle compression sleeve" for his right ankle as he was having difficulty building muscle in his ankle, compounded by not having proper footwear and that the stress was affecting his right knee also.

1.35 On May 26, 2023 Plaintiff sent a kite to Defendant Posalski of Health Services regarding his soft shoes which according to the tracking number had arrived on May 12, 2023.

1.36 On May 29, 2023 Plaintiff sent a kite to Health Services, addressed to "Poslowski," of which he meant Defendant Posalski stating that "I have breathing problems and hyper tension and acid reflux to which you have never provided a physical exam for. As well, you have not fully replaced my doctor prescribed medications from my regular Canadian prescriptions nor replaced my CPAP mask you have taken, and I am having problems breathing when allergies are affecting me right now."

1.37 On May 30, 2023 Plaintiff sent another kite to Defendant Posalski of Health Services regarding his soft shoes, saying that his shoes "must be collecting dust in Health Services somewhere, which I am told you are head of."

1.38 Sometime in early June, 2023 Plaintiff was informed that his shoes were sent back due to the authorization paperwork not being properly placed on the inside and outside of the package. Plaintiff contends that he ensures paperwork was properly placed. Many other inmates at FDC Seatac had issues receiving soft shoes, ankle and knee braces, and at this time including but not limited to Michael Slocumb, Ronnie Griffin and Jesse Bailey.

1.39 On June 7, 2023 Plaintiff sent a kite to Health Services, again requesting to see a physician and get an examination. Also requesting an evaluation of his medications, his issues receiving soft shoes, ankle and knee support braces, and stating his fear that the "damage" to his joints may be "causing lifetime debilitating injuries if not cared for and corrected."

1.40 On June 9, 2023 Plaintiff had a medical appointment with Defendant Dy, the physician at the FDC. The Plaintiff's first and only exam.

1.41 At this appointment, Defendant Dy did a rudimentary check of the Plaintiff's knees by having him move them(extend his legs while seated).

1.42 At this appointment, Defendant Dy told Plaintiff x-rays for his knees would be ordered.

1.43 At this appointment, Plaintiff signed waivers for the Health Services access to his previous Canadian records.

1.44 At this appointment, Plaintiff mentioned his high blood pressure to Defendant Dy, whom performed a blood pressure check on Plaintiff which read 150/90, prescribed double the dose of Amlodipine 10mg per day, and also prescribed Lisinopril at 20mg per day for his blood pressure.

1.45 At this appointment, Defendant Dy informed Plaintiff that he had high cholesterol and prescribed Xatorvastatin 20mg per day.

1.46 At this appointment, Plaintiff also spoke with Defendant Martin, who was also present, regarding the fact that she was in charge of stocking the medical equipment at the FDC, and about his medical shoes and their whereabouts.

1.47 Shortly after this appointment, Plaintiff began to experience adverse effects from the newly prescribed medication.

**STATEMENT OF CLAIMS** (continued from page 5, additional page 2)

1.48 On June 16, 2023 Plaintiff sent a kite to Health Services   stating that he was feeling light-headedness and requested info about the medications  he had been prescribed because he didn't know "any of the side effects from any of these medications as there were no instructions given with my new meds."

1.49 On June 17, 2023 Plaintiff learned that his soft shoes had been rejected because there was not an authorization form on the inside and outside of the package. Counselor Smith did not inform Plaintiff on how to send the shoes.

1.50 Plaintiff never recieved a response to the June 16, 2023 kite but stopped taking Xatorvastatin, which he assumed was causing the adverse effects, on June 22, 2023 at his own discretion.

1.51 Plaintiff notified Health Services in several kites at this time, beginning on June 22, 2023 that the medication was causing him problems and he needed replacement medication.

1.52 On June 22, 2023 Defendant Posalski responded to an informal resolution grievance submitted by Plaintiff earlier that month requesting replacement of Plaintiff's full face CPAP mask.

1.53 Defendant Posalski's response to Plaintiff stated that "[we] are currently out of larger size face masks, and they are on order. You will be provided with a replacement as soon as they arrive."

1.54 Defendant Posalski did not mention anything about a one-mask policy or the need for Plaintiff to turn in his nose mask in order to recieve his full-face CPAP mask.

1.55 Also on June 22, 2023 Defendant Posalski responded to an informal resolution grievance submitted by Plaintiff earlier that month regarding Plaintiff's request for support braces for his ankle and knee.

1.56 Defendant Posalski's response to Plaintiff stated that "[a] consult was written for an x-ray of your ankle and knee in order to determine the extent of your injuries. A request for medical records has also been sent to the provider indicating no results as of this writing. Until one of those is recieved and reviewed, you cannot be provided a brace."

1.57 Plaintiff had no control over if or how soon Health Services would schedule him for an x-ray.

1.58 On June 26, 2023 Counselor Smith provided a new shoe pass to Plaintiff and several other inmates who also had trouble recieving shoes with an approved shoe pass.

1.59 On June 26, 2023 Plaintiff sent a kite to Health Services regarding the adverse effects from his new medications, stating that he had submitted hand-written kites a few days earlier with no response, and detailed that he had to ask a pill line nurse on how (when, with and without what foods and drinks etc) to take the new medication, and he again requested a sick-call visit and a blood pressure check.

1.60 On June 28, 2023 Plaintiff sent a kite to Health Services again regarding his new medication prescribed by Defendant Dy, stating that he was experiencing "severe chills, feeling lethargic, numbness in hands/fingers aching muscles, light headedness, and blurry vision." He sent a follow up kite 2 days later pertaining to the same issue.

1.61 On July 1, 2023 Plaintiff noticed that nurse Egelston happened to have a blood pressure monitor on her cart and asked to have his blood pressure checked. Plaintiff's blood pressure reading was 155/103.

**STATEMENT OF CLAIMS** (continued from Page 5, additional page 3)

1.62 On July 3, 2023 Plaintiff attempted to file an administrative remedy for the CPAP mask issue. He turned it in to Unit Manager Lavatia, but she denied it and it was never processed for the reason that medical was aware of this issue and was awaiting for the mask to be restocked. He sent a follow up kite to Unit Manager Lavatia several days later requesting help with this issue.

1.63 On July 7, 2023 Plaintiff sent a kite to Unit Manager Lavatia in which he complained of the lack of responses to his kites and grievances, stating,"your medical system with kytes and email is noneffective and falling directly into the waste bucket. I realize that you're understaffed but these are life threatening."

1.64 On July 19, 2023 Plaintiff was seen by Officer Newland, a Health Services officer who had come in from an out of state facility to temporarily work at the FDC, checked Plaintiff's blood pressure which read 148/88, and provided him with a new prescription medication; Rosuvastatin Calcium 5mg, to be taken once every morning.

1.65 On July 20, 2023 Plaintiff gave Officer Newland the remainder of his Xatorvastatin prescription. Within the next few days, Plaintiff recieved Rosuvastatin.

1.66 On July 21, 2023 Plaintiff sent a kite to Unit Manager Lavatia after hearing that his soft shoes were at the post office where they arrived on July 11, 2023.

1.67 On the same day, Unit Manager Lavatia responded stating "[y]our shoes are in the mailroom. I advised medical today and the will be picking it up on Monday.

1.68 Plaintiff recieved his soft shoes on July 26, 2023.

1.69 On July 27, 2023 Plaintiff recieved a response to an administrative remedy from Defendant Barron regarding his requests for ankle and knee support braces.

1.70 In Defendant Barron's response, he repeated Defendant Posalski's previous response stating that "[u]ntil we recieve verification that an ankle and knee brace are needed [from previous medical records or an x-ray] we cannot provide you with a brace."

1.71 On August 3, 2023 Plaintiff sent a kite to Defendant Barron regarding his attempt to obtain a full-face CPAP mask, stating that he has been requesting since his arrival and that "Iam losing sleep and my health is deteriorating because of it. Iam hardly able to fall asleep at all . . . Please, if you are willing, help stock masks through the right staff members."

1.72 On August 7, 2023 Defendant Warden responded to the above kite stating that"Communication has been made with the Health Services Administrator in order to address your concern accordingly."

1.73 Some time in early August, 2023 Plaintiff ran out of blood pressure medication and began requesting refills to pill line.

1.74 On August 10, 2023 Plaintiff suffered an injury while walking the tier in the day room which he felt to be a pinched nerve or muscle sprain and which he felt from his hip to mid-back.

1.75 This injury left Plaintiff bed-ridden for a week, with difficulty breathing when lying down, and Plaintiff needed to borrow a walker from another inmate in order to move around, and with limited mobility in the following months.

**STATEMENT OF CLAIMS** (continued from Page 5, additional page 4)

1.76 To the best of Plaintiff's information and belief, this injury was catalyzed by the stress on his joints and back that he had been experiencing and requesting medical care for, and may have had to do with his Sciatic nerve.

1.77 On the same day August 10, 2023 Plaintiff filed a hand written sick-call request regarding his injury that he specifically marked as "urgent" and as an "emergency."

1.78 On August 11, 2023 Plaintiff sent an electronic kite to Defendant Dy of Health Services regarding his injury from the previous day regarding his injury from "the cumulative stress that has been on my back, hips knees, and joints... It is extremely painful and I can hardly move. Iam bed ridden, in pain, and I may need a wheelchair and medication to help with the pain." Plaintiff requested to be "urgently" seen by Defendant Dy, and cited increased trouble breathing.

1.79 Plaintiff followed up the above kite with more hand-written and electronic requests for sick call.

1.80 On August 15, 2023 Plaintiff spoke to Councelor Smith, whom had spoken to Defendant Martin, whom informed Councelor Smith that she had not ordered the full-face CPAP mask yet because she had to get a purchase order approved by one of her superiors.

1.81 On August 16, 2023 Plaintiff sent a kite to Defendant Martin stating he had heard from other officers that she is responsible for stocking medical quipment, and stating "[p]lease do what you can to see if there is a solution to my issue soon...this is an urgent issue."

1.82 On August 23, 2023 Health Services responded to a kite sent nearly 3 months earlier on June 30, 2023 stating "[w]e will schedule you for a sick call."

1.83 Later, on September 12, Health Servies again responded to a kite 3 months old from June 7, 2023 stating "[A] sick call appointment has been scheduled."

1.84 Despite these requests, Plaintiff was never seen for sick-call for this injury in the nearly 3 months he remained at the FDC.

1.85 On September 3, 2023 Plaintiff sent a kite to Defendant Dy regarding her refusal to see him for sick-call and his recent injury, stating that he is "still under a lot of pain" and stating;"I still had not had any type of response at all...why have I not had a sick call scheduled for a severe debilitating injury such as this in four weeks? This is a direct result from your refusing my shoe and orthotic issues as well as my knee and ankle brace requests. Taking 5 months to get a shoe pass and recieve the shoes have in turn caused more advanced problems and worsening conditions throughout my legs and now my back. "Plaintiff also mentioned he has still not recieved ankle or knee support braces or an x-ray, and he requested a sick-call.

1.86 On September 5, 2023 Plaintiff sent a kite to Health Services stating that he had been out of meds since early August and that he had "been overlooked." A copy of this kite was also handed to nurse Egelston at pill line. Plaintiff's medication was refilled on September 8, 2023.

1.87 On September 5, 2023, more that 6 months after Plaintiff arrived at the FDC, Plaintiff recieved a pass for shipping in a CPAP mask at his expense. The pass had been approved on 08/29/2023.

1.88 A third party sent in a mask which was recieved by the Plaintiff on September 22, 2023. However, the third party sent the wrong mask on accident, another nose mask.

Page 5, additional page 5

STATEMENT OF CLAIMS (continued from Page 5, additional page 5)

1.89 Plaintiff transferred from FDC Seatac in early November, 2023.

1.90 Plaintiff was never provided an ankle or knee support brace while at the FDC despite first mentioning the need for them nearly 6 months prior to transferring, and despite experiencing severe pain daily in both his ankles, knees, hips, and back.

1.91 Plaintiff was never provided with x-rays having been unambiguously ordered nearly 5 months before Plaintiff was transferred.

1.92 Plaintiff was never provided with a follow up appointment or sick-call appointment, generally, in the near 5 months he remained at the FDC following his June 9, 2023 appointment with Defendant Dy, besides a a brief callout with a nurse that concerned his cholesterol and blood pressure medication. Despite continually requesting appointments at that time, and despite an injury suffered on August 10, 2023 that left him bed-ridden, and requiring the use of an inmate borrowed walker for a period of more than a week, and with longer term limited mobility.

1.93 Building from his initial stress on his right ankle and right knee, over time, both Plaintiff's knees and ankles became affected, as well as his hips and back, which became more strained, thus suffering further avoidable injury.

1.94 Also due to the cumulative lack of care provided in regard to Plaintiff's joints and back, Plaintiff was unable to exercise properly, often feeling unable to do anything beyond basic stretching. As a result of this Plaintiff gained weight which caused more stress on his joints, limited mobility, and generally interfered with his daily activities.

1.95 Due to not having a proper CPAP mask for his duration at the FDC, Plaintiff lost a considerable amount of restful sleep.

1.96 To the best of Plaintiff's information and belief, his health deteriorated from not having a properly functioning CPAP mask while at the FDC. Many nights did not yield any restful sleep at all.

1.97 Over the entire duration of his incarceration at the FDC, Plaintiff had his blood pressure checked a total of 3 times, each detailed above, despite continual requests to have his blood pressure monitored.

1.98 Ultimately, in the first 3 months of his incarceration at the FDC he was provided either none or inadequate blood pressure medication.

1.99 Plaintiff was never provided a cholesterol reading in the near 5 months that he was at the FDC. After the June 9, 2023 appointment with Defendant Dy he was prescribed medication that caused him adverse side effects, and he was not provided with an alternative medication until more than 1 month after he had discontinued use of the previous medication, and informed the staff of the adverse side effects he was experiencing.

1.100 Plaintiff heard staff complain numerous times thoughout his period of confinement at the FDC that they were "understaffed."

1.101 Understaffing at the FDC garnered major media attention in January, 2023 Seattle Times article, published only 2 months after Plaintiff was transferred from the FDC, reported :"[m]edical unit vacancies have resulted in delayed treatment, said regional Federal Public Defender Colin Fieman." (Seatac Federal Jail struggles with 50% vacancy rates for key positions, Nina Shapiro, The Seattle Times).

1.102 Plaintiff observed many other inmates at the FDC also suffer from inadequate sick-call procedures, including but not limited to Tomas Carver, Ronnie Griffin, and Michael Slocumb.

1.103 Plaintiff suffered daily mental anguish due to his medical needs being ignored, and the daily physical pain they caused him.

**STATEMENT OF CLAIMS** (continued from Page 5, additional page 6)

**The effects of Plaintiff being deprived of a properly functioning CPAP mask, delayed in the provision of proper footwear, deprived him of ankle and knee support braces, and deprived or given inadequate blood pressure medication in regard to obesity and obesity hypoventilation syndrome (OHS).**

1.104 The Defendant's conduct proximately caused Plaintiff to have a higher obesity plateau, and as a result develope OHS.

1.105 Obesity is a major risk factor for sleep apnea, and the two conditions have a complex bidirectional relationship.

1.106 OHS, or Pickwickian Syndrome results from elevated Carbon Dioxide in ones blood and not enough Oxygen.

1.107 Deprivation of Oxygen from untreated sleep apnea can lead to higher obesity plateaus and OHS.

1.108 Plaintiff complained in multiple kites to Health Services that he was gaining weight, and that he was unable to exercise properly due to having inadequate footwear, and no support braces for his ankles and knees, additionally the danger presented as a result of not having the proper medication to support healthy blood pressure and cholesterol levels.

1.109 Plaintiff was told by Defendant Dy, at his only physical examination on June 9, 2023 that he should be no more than 200lbs(despite knowing and being reminded of the barriers the Plaintiff faced to do so properly), at which time the Plaintiff weighed approximately 265lbs. He had gained approximately 15 lbs since his arrival 3 months earlier. Plaintiff later weighed 268lbs on July 19, 2023.

1.110 Moderate obesity can reduce life expectancy about 3 years, and severe obesity can reduce it about 10 years.

1.111 OHS typically leads to a shortened life expectancy, especially if left untreated, with the mortality rate for OHS at 23% over 18 months for people with other medical conditions.

1.112 The deprivation of Oxygen Plaintiff experienced from not having a properly functioning CPAP mask at the FDC, the significant delay of provision of necessary medical equipment for exercise purposes, and the deprivation of adequate medication to control Plaintiff's high blood pressure, caused a higher obesity plateau in Plaintiff, proximately caused OHS, and proximately reduced Plaintiff's life span.

**The effects of Plaintiff being deprived of a properly functioning CPAP mask, and being deprived of adequate blood pressure control medication on heart related conditions.**

1.113 Plaintiff not being provided a properly functioning mask, leaving his sleep apnea untreated, proximately caused heart failure, hypertrophic cardiomyopathy(HCM), and coronary artery disease(CAD), of which Plaintiff exhibited symptoms of during his confinement at the FDC.

1.114 Sleep apnea causes nocturnal hypoxemia(dropping of blood Oxygen levels while asleep), this can have negative effects on circulatory hemodynamics and worsen symptoms of HCM, a condition where the left ventricle of the heart becomes abnormally thick, inhibiting its ability to pump blood to the rest of the body effectively.

1.115 The stress placed on the heart caused by the untreated sleep apnea can lead to heart failure which occurs when the heart can't pump blood as well as it should.

**STATEMENT OF CLAIMS** (continued from Page 5. additional page 7)

1.116 Sleep apnea is also linked to CAD, which is damage or disease in the heart's primary blood vessels. Repeated surges in blood pressure levels, caused by untreated sleep apnea, can damage the lining of the vessels and cause CAD.

1.117 Even well monitored sleep apnea increases the risk of heart failure by 140% and the risk of CAD by 30%; with untreated and poorly treated sleep apnea, the rates of risk are higher.

1.118 Heart failure is associated with a loss of 7.3 years in life expectancy compared to the general population, and the survival rate of chronic heart failure is only 30% after 10 years.

1.119 HCM is a highly complex disease capable of serious clinical consequences and premature death in certain cases.

1.120 The American Medical Association estimates that individuals with CAD may experience a reduced life span by about 10 years.

1.121 The American Heart Association estimates that individuals who suffer a heart attack have a reduced life span by around 16 years. Most heart are caused by CAD.

1.122 Plaintiff began suffering from swollen legs and ankles, chest pain, difficulty breathing, light headedness, fatigue, which all manifest signs of heart failure, HCM, and CAD, while being deprived of a functional CPAP mask.

1.123 The deprivation of Oxygen Plaintiff experienced from not having a properly functioning CPAP mask while confined at the FDC has proximately caused heart failure, HCM, and CAD, and has thus proximately reduced Plaintiff's life span.

**CLAIMS OF RELIEF** (continued from Page 5 lower section)

1.125 in, while holding the responsibility of ensuring that inmates were provided with proper medical care, despite being aware through that time that Plaintiff's nose mask was inadequate constituted deliberate indifference to Plaintiff's serious medical needs in violation of the 8th and 14th Amendments.

1.126 The failure of Defendant Posalski, as AHSA, to provide Plaintiff with an ankle and/or knee support brace, provide an x-ray for this issue in the near 5 months Plaintiff remained at the FDC after Health Services ordered an x-ray as a pre-requisite to receiving a brace, in there being significant delay in providing orthotics and a soft shoe pass, and to generally provide timely care which could have been prevented the further deterioration of the health and injury to the Plaintiff in his joints and back, despite his awareness of PLaintiff's requests and condition constituted deliberate indifference to Plaintiff's serious medical needs in violation of the 8th and 14th Amendments.

1.127 The failure of Defendant Posalski, as AHSA, to ensure that Plaintiff was provided with adequate medication, without delay or extended lapses of unavailability, and that Plaintiff's medication needs were responded to promptly constituted deliberate indifference to Plaintiff's serious medical needs in violation of the 8th and 14th Amendments.

1.128 The failure of Defendant Posalski, as AHSA, to ensure that the FDC had adequate sick-call procedures, and adequate medical screening at intake(R&D), and thus to ensure Plaintiff and other inmates access to adequate medical care, and that emergency sick-call requests are responded to promptly, or in allowing a 3 month delay for Plaintiff to even sign a waiver for access to his medical records despite his immediate requests to do so constituted deliberate indifference to Plaintiff's serious medical needs in violation of the 8th and 14th Amendments.

1.129 The failure of Defendant Dy to prioritize or make urgent the provision of a full-face mask to Plaintiff for his CPAP machine in the 8 months Plaintiff was at the FDC while she was the only full-time physician, and was aware throughout that time Plaintiff's nose mask was inadequate, constituted deliberate indifference to Plaintiff's serious medical needs in violation of the 8th and 14th Amendments.

1.130 The failure of Defendant Dy to prioritize or make urgent the provision to Plaintiff of ankle and/or knee support braces for since Plaintiff had placed Health Services on notice for this issue nearly months before being transferred from the FDC, and to schedule and see to an x-ray which Defendant Dy ordered for Plaintiff nearly 5 months before Plaintiff transferred from the FDC, all of which resulted in the further deterioration of health, pain, and injury to Plaintiff, despite her awareness to Plaintiff's condition and requests, including his direct pleading to her for help, constituted deliberate indifference to Plaintiff's serious medical needs in violation of the 8th and 14th Amendments.

1.131 The failure of Defendant Dy to see Plaintiff for sick-call or allow him to sign a waiver for access to his medical records for the first 3 months following his arrival until their June 9, 2023 appointment despite numerous requests to Health Services to Health Services made in that time by Plaintiff requesting to see a doctor regarding his conditions, including his issues with prescribed medications which were prescribed to him without a physical examination, or even once in the remaining 5 months that Plaintiff was at the FDC, despite his numerous requests for a follow up appointment regarding his conditions, including emergency

CLAIMS OF RELIEF (continued from Page 5. additional page 9)

1.131 requests for sick-call, to Health Services and to Defendant Dy directly, following a debilitating physical injury, and his requests to sign a waiver to allow access to his medical records shortly following his arrival at the FDC constituted deliberate indifference to Plaintiff's serious medical needs in violation of the 8th and 14th Amendments.

1.132 The failure of Defendant Martin to stock and provide Plaintiff with a working full-face mask for his CPAP machine for the 7 months that Plaintiff was at the FDC, or to take action to promptly rectify Plaintiff's issue and prevent injury, while being responsible for stocking the FDC's medical supplies, and despite being aware though that time that PLaintiff's nose mask was inadequate constituted deliberate indifference to Plaintiff's

serious medical needs in violation of the 8th Amendment.

1.133 The failure of Defendant Barron to fulfill his supervisory role as Warden while the above failures of his subordinates were taking place over a significant period of time, despite his awareness of his responsibility to prevent them, and that his subordinate's failures were part of an informal custom at the FDC of inadequate medical care, and of institutional procedures and implemented policies which included chronic understaffing and inadequate sick-call procedures, which created an unreasonable risk of an 8th or 14th Amendment injury constituted deliberate indifference to Plaintiff's serious medical need in violation of the 8th and 14th Amendments.

1.134 As a result of the Defendant's violations of Plaintiff's constitutional right to medical care, Plaintiff suffered physical and emotional pain and injury.

1.135 The above failures of the Defendants to provide Plaintiff with a proper functioning CPAP mask, of unduly delaying in providing adequate medical footwear, and an ankle or knee support brace, which interfered with Plaintiff's ability to exercise, and to consistently provide adequate medication proximately caused a higher obesity plateau in Plaintiff and has proximately caused OHS, and has thus proximately reduced Plaintiff's life span.

1.136 The above failures of FDC Seatac employees to provide Plaintiff with a proper functioning CPAP mask, to consistently provide adequate medication, and to provide adequate medical footwear and an ankle or knee support brace, which interfered with PLaintiff's ability to exercise, proximately caused heart failure  HCM  and CAD and thus proximately reduced Plaintiff's life span.

## COUNT II

*Identify the second right you believe was violated and by whom:*

2.1 _____

_____

*State the <u>facts</u> of your second claim below. Include all the facts you consider important. Be specific about dates, times, locations, and the names of the people involved. Describe exactly what each specific defendant did or failed to do that caused you injury or violated your rights, and include any other facts that show why you believe what happened was wrong. If you need additional space, you may attach extra sheets.*

2.2 _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Page 6 of 9

_____

_____

_____

_____

_____

_____

*State with specificity the <u>injury, harm, or damages</u> you believe you suffered as a result of the events you described above in Count II.  Continue to number your paragraphs.*

_____

_____

_____

_____

## COUNT III

*Identify the third right you believe was violated and by whom:*

3.1 _____

_____

*State the <u>facts</u> of your third claim below.  Include all the facts you consider important.  Be specific about dates, times, locations, and the names of the people involved.  Describe exactly what each specific defendant did or failed to do that caused you injury or violated your rights, and include any other facts that show why you believe what happened was wrong.  If you need additional space, you may attach extra sheets.*

3.2 _____

_____

_____

_____

_____

Page 7 of 9

*State with specificity the <u>injury, harm, or damages</u> you believe you suffered as a result of the events you described above in Count III.  Continue to number your paragraphs.*

## IV.    RELIEF

*State exactly what you want the Court to do for you.  For example, you may be seeking money damages from an individual defendant, you may want the Court to order a defendant to do something or to stop doing something, or you may want both kinds of relief.  Make no legal arguments.  Cite no cases or statutes.*

WHEREFORE, Plaintiff requests that this Court grant the following relief:

A. Declare that Defendants Posalski, Dy, Martin, and Barron violated Plaintiff's 8th and 14th Amendment right to medical care

B. Award compensatory damages jointly and severally against each Defendant for Plaintiff's physical and emotional injuries.

C. Award punitive damages against each Defendant.

D. Create a constructive trust to manage existing and future health complications that Plaintiff may have as a proximate result of the conduct of the Defendants. (1)

## V.    SIGNATURE

*By signing this complaint, you represent to the Court that you believe the facts alleged to be true to the best of your knowledge, that you believe those facts show a violation of law, and that you are not filing this complaint to harass another person or for any other improper purpose.*

12/12/2024
Dated

Plaintiff's Signature

(1) E. Grant Plaintiff such other relief as it may appear Plaintiff is entitled to.

Page 9 of 9

## DECLARATION

Pursuant to **28 U.S.C. §1746,** I declare under perjury that the preceding is true and correct. Signed this _12th_ day of _DECEMBER_, 2024.