Rev. 3/19

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

Wayne Hollaus,   47120-510
*Plaintiff's full name and prisoner number*

                          Plaintiff,

v.

Kevin Posalski, Maria Dy, and

Howard Barron, sued in their individual

capacities.
*Defendant's/defendants' full name(s)*

                         Defendant(s).

(If you cannot fit all of the defendants' names in the space provided, please write "see attached" in the space above and attach additional sheets of paper, as necessary, with the full list of names. The names listed here must be identical to those in Section II. Do not include addresses here. **Individuals whose names are not included in this section will not be considered defendants in this action.**)

Case No. _____
(leave blank – for court staff only)

### PRISONER CIVIL RIGHTS COMPLAINT

Jury Demand?
■ Yes
☐ No

_____ FILED          _____ ENTERED
_____ LODGED      _____ RECEIVED

**JUN 0 2 2025**   **MH**

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

## <u>WARNINGS</u>

1.     Do not use this form if you are challenging the validity of your criminal conviction or your criminal sentence. If you are challenging your conviction or sentence, or if you are seeking restoration of good-time credits that would shorten your sentence, you must file a Petition for Writ of Habeas Corpus. If you use this form to challenge your conviction or sentence, you risk having your claim dismissed. Separate forms are available for filing a habeas petition.

2.     Under the Prison Litigation Reform Act ("PLRA"), you are required to exhaust all remedies in your institution's grievance system that are available to you before filing suit. This generally means that you must file a grievance and, if it is denied, appeal it through all available levels of review. Your case may be dismissed if you fail to exhaust administrative remedies, unless the administrative grievance process was not "available" to you within the meaning of the PLRA. You are not required to plead or show that you have exhausted your claim in this complaint.

3.    Please review your complaint carefully before filing. If your case is dismissed, it may affect your ability to file future civil actions while incarcerated without prepaying the full filing fee. Under the PLRA, a prisoner who has had three or more civil actions or appeals dismissed as frivolous, malicious, or for failure to state a claim cannot file a new action without first paying the full filing fee, unless the prisoner is in imminent danger of serious bodily injury.

4.    Under Federal Rule of Civil Procedure 5.2, papers filed with the court, including exhibits or attachments to a complaint, <u>may not</u> contain certain information, which must be modified as follows:

Do <u>not</u> include:
- a full social security number
- a full birth date
- the full name of a minor
- a complete financial account number

Instead, use:
→ the last four digits
→ the birth year
→ the minor's initials
→ the last four digits

5.    You may, but do not need to, send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint. Any documents you submit *must relate directly to the claims you raise in this lawsuit.* They will become part of the court record and *will not be returned to you.*

# I.    PLAINTIFF INFORMATION

HOLLAUS, WAYNE S.
Name (Last, First, MI)                                                    Aliases/Former Names

47120-510
Prisoner ID #

FEDERAL CORRECTIONAL INSTITUTION LOMPOC II
Place of Detention

3901 KLEIN BLVD, LOMPOC, CA
Institutional Address

LOMPOC                              CA                    93436
County, City                        State                 Zip Code

*Indicate your status:*

☐   Pretrial detainee                    ☐   Convicted and sentenced state prisoner
☐   Civilly committed detainee           ☒   Convicted and sentenced federal prisoner
☐   Immigration detainee

Page 2 of 9

## II.    DEFENDANT INFORMATION

*Please list the following information for each defendant.  If the correct information is not provided, it could delay or prevent service of the complaint.  Make sure that the defendant(s) listed below are identical to those contained in the caption on the first page of the complaint. Attach additional sheets of paper as necessary.*

Defendant 1:    Posalski, Kevin
Name (Last, First)

Acting Health Service Administrator and Nurse (at time in question)
Current Job Title

SeaTac, FDC, 2425 South 200th Street
Current Work Address

Seattle,                          WA                    98198
County, City                     State                  Zip Code

Defendant 2:    Dy, Maria
Name (Last, First)

Physician (at the time in question)
Current Job Title

SeaTac, FDC, 2425 South 200th Street
Current Work Address

Seattle,                          WA                    98198
County, City                     State                  Zip Code

Defendant 3:    Barron, Howard
Name (Last, First)

Warden, FDC SeaTac (at the time in question)
Current Job Title

SeaTac, FDC, 2425 South 200th Street
Current Work Address

Seattle,                          WA                    98198
County, City                     State                  Zip Code

Page 3 of 9

## III.    STATEMENT OF CLAIM(S)

*In this section, you must explain what you believe each defendant did to violate your civil rights, and if you know, identify the federal statutory or constitutional right you believe was violated.*

*If you believe the defendant(s) violated your civil rights in more than one way, explain each violation under a different count. For example, if you believe you received constitutionally inadequate medical care and your religious rights were substantially burdened, include one claim under "Count I" (i.e., medical) and the other claim under "Count II" (i.e., religion).*

*Number your paragraphs. For example, in Count I, paragraphs should be numbered 1.1, 1.2, 1.3, etc., and in Count II, paragraphs should be numbered 2.1, 2.2, 2.3, etc. The first two paragraphs of each Count have been numbered for you.*

*If you have more than three counts, attach additional pages and follow the same format for each count.*

*If you attach documents to support the facts of your claim(s), you <u>must</u> specify which portion of the document(s) (i.e., page and paragraph) you are relying on to support the specific fact(s) of your claim(s). <u>If you do not specify the portion of the supporting document(s), the Court may disregard your document(s).</u>*

### <u>COUNT I</u>

*Identify the first right you believe was violated and by whom:*

1.1 Within the time between Plaintiff's arrival to the FDC, March 2, 2023, and the

day of his sentencing, September 29, 2023, Plaintiff's Fourteenth Amendment right to

medical care as a pretrial detainee was violated by Defendants Posalski, Dy, and Barron.

*State the <u>facts</u> of your first claim below. Include all the facts you consider important. Be specific about dates, times, locations, and the names of the people involved. Describe exactly what each specific defendant did or failed to do that caused you injury or violated your rights, and include any other facts that show why you believe what happened was wrong. If you need additional space, you may attach extra sheets.*

1.2 Plaintiff has severe sleep apnea, requires a CPAP machine, and had been using a

CPAP machine prior to arriving at the FDC.

1.3 Sleep apnea is a serious health condition which if untreated can raise one's risk

of high blood pressure, heart diseases such as Coronary Artery Disease and
Hypertrophic Cardiomyopathy, increased obesity plateaus, and diabetes.
(https://webmd.com/sleep-disorders/sleep-apnea).

1.4 Plaintiff suffers from allergies and sinus problems. Plaintiff requires a full-face mask when he is suffering from these problems because he cannot breathe through his nose, making his nose mask insufficient.

1.5 Plaintiff had previously taken a Canadian Government administered CPAP test which showed that on average Plaintiff stops breathing 32 times per hour.

1.6 Severe sleep apnea is defined as when apneic events happen more than 30 times per hour. (WebMD, Id.).

1.7 Before arriving at the FDC, Plaintiff had been suffering from joint issues, mostly in his right knee, right ankle, and back issues stemming from his Plantar Fasciitis.

1.8 Before arriving at the FDC, Plaintiff was taking medication for blood pressure, and COPD/Asthma. All medication was prescribed by his Canadian doctor, Dr. Mark Gulka.

1.9 Plaintiff arrived at the FDC on March 2, 2023 with both a full-face XL CPAP mask, a smaller nose mask, his CPAP machine, a scandisk insert in his CPAP machine which rack of his breathing, soft shoes, orthotic insoles, and his doctor prescribed medication, all of which he brought with him from Canada.

(Continued on page 5.1).

*State with specificity the <u>injury, harm, or damages</u> you believe you suffered as a result of the events you described above in Count I. Continue to number your paragraphs.*

1.127 Plaintiff's right to medical care was constitutionally protected under the Due Process Clause of the 14th Amendment while he was a pre-trial detainee until he was sentenced as guilty on September 29, 2023.

(Continued on page 5.13).

**Statement of Facts**

1.10 During intake shortly after arrival, officers of the FDC's Receiving and Discharge Department (R&D) told Plaintiff he could only have one CPAP mask, presumably citing their understanding of FDC policy.

1.11 Plaintiff protested the confiscation and insisted on bringing both of his masks in, but he was only allowed to bring his nose mask into the housing unit.

1.12 The R&D officers confiscated Plaintiff's full-face mask and the scandisk insert of his CPAP machine.

1.13 The R&D officers also confiscated his soft shoes and orthotic insoles.

1.14 The R&D officers also confiscated his doctor prescribed medication that he had arrived with.

1.15 Plaintiff's medical screening at intake consisted of a brief interview, a tuberculosis test, and a pulse oximeter reading. There was no physical examination provided.

1.16 On March 13, 2023 Plaintiff submitted a hand written kite requesting a replacement for his full-face XL CPAP mask, orthotics, his medication, including his blood pressure pills, and for a physician's appointment.

1.17 This kite was responded to by Officer Satalino on April 7, 2023 only stating that Plaintiff had "an upcoming apt[sic] with a provider."

1.18 For about 3 weeks after arriving at the FDC Plaintiff had no medication at all.

1.19 Sometime around March 23, 2023 Plaintiff was prescribed Amlodipine 5mg to be taken each morning for blood pressure support and given an Asmanex Twisthaler (Mometasone Furoate) for his asthma.

1.20 Even after taking 5mg of Amlodipine daily, Plaintiff felt that his blood pressure was still consistently high, and much worse than it was before he arrived at the FDC when he was on his previous medications.

**Defendant Posalski, Acting Health Services Administrator**

1.21 On March 28, 2023 Plaintiff sent an electronic kite to Health Services, of which Defendant Posalski was the Acting Health Services Administrator (AHSA), regarding his confiscated full-face CPAP mask stating that "I need this for when I have sinus issues ad cannot use my nose mask which is a regular occurance with my lung issues and my asthma." (All kites spelled in context.)

1.22 On the same kite, Plaintiff requested "a pair of medically prescribed orthotics and proper physician approved footwear," citing his Plantar Fasciitis. He stated that "I am in constant pain due to wearing insufficient footware supplied by the institution (crocs). I am experiencing pain and swelling in my right foot and pain in my right knee at this time, which in time, will start affecting my hips, and then

Statement of Facts

back," adding that his family doctor and chiropractor had prescribed orthotics and medical shoes "for many years now."

1.23 In the same kite, Plaintiff stated that "If you need papers signed to access my medical records to fulfill my request, I am more than willing to sign forms."

1.24 On April 3, 2023 Plaintiff sent a kite to Health Services, addressing it to "Polowski," of which he meant Defendant Posalski stating that "I have seen other inmates CPAP provided by the state that includes many different sizes and types of masks, so I would appreciate if you could supply me a full mask."

1.25 On the same kite, Plaintiff again grieved his confiscated orthotics and soft shoes, stating "[s]ince my arrival, my right foot has swollen up as well as my right knee."

1.26 Also, in the same kite, Plaintiff mentioned that he did start receiving some medication until 3 weeks after arrival, but has not had a physical exam and requested to see a physician.

1.27 On April 12, 2023 Plaintiff again sent a kite to Health Services requesting a proper physician's exam and re-evaluation of his blood pressure medications.

1.28 On April 14, 2023 Plaintiff sent a kite to Health Services requesting a "[d]octors visit to do a physical exam that should have been done before giving medications or being left in the facility with no medical attention given."

1.29 On April 17, 2023 Plaintiff sent a kite to Health Services stating "I was having higher than usual blood pressure and after asking to check my BP, I was told by pill line to just lay down and drink water."

1.30 On April 19, 2023 Plaintiff sent a kite to Health Services requesting orthotics, stating this is an "immediate need" and that he is in "excruciating pain" from not having them, and a physicians exam at sickcall to go over his conditions, including sleep apnea, and so that Plaintiff "would be able" to sign a waiver for his "medical records."

1.31 Plaintiff continued to request a solution to these issues, and for a physician's examination, in numerous other kites, only a fraction of which are detailed here.

1.32 Sometime in late April or early May, Defendant Posalski signed off on a soft shoe pass for the Plaintiff.

1.33 On May 8, 2023 Plaintiff received orthotic insoles.

1.34 On May 17, 2023 Plaintiff sent a kite to Health Services requesting an "ankle compression sleeve" for his right ankle as he was having difficulty building muscle in his ankle, compounded by not having proper footwear and that the stress was affecting his right knee also.

1.35 On May 26, 2023 Plaintiff sent a kite to Defendant Posalski regarding his soft

5.2

Statement of Facts

shoes which according to the tracking number had arrived on May 12, 2023.

1.36 On May 29, 2023 Plaintiff sent a kite to Health Services, addressed to "Poslowski," of which he meant Defendant Posalski, stating that "I have breathing problems and hypertension and acid reflux to which you have never provided a physical exam for. As well, you have not fully replaced my doctor prescribed medications from my regular Canadian prescriptions nor replaced my CPAP mask you have taken, and I am having problems breathing when allergies are affecting me right now."

1.37 On May 30, 2023 Plaintiff sent another kite to Defendant Posalski of Health Services regarding his soft shoes, saying that his shoes "must be collecting dust in Health Services somewhere, which I am told you are head of."

1.38 Sometime in early June, 2023 Plaintiff was informed that his shoes were sent back due to the authorization on paperwork not being properly placed on the inside and outside of the package. Plaintiff contends that he ensures paperwork was properly placed. Many other inmates at FDC SeaTac had issues receiving soft shoes, ankle and knee braces, and at this time including but not limited to Michael Slocumb, Ronnie Griffin and Jesse Bailey, but later received soft shoes with minimal hurdles.

1.39 On June 7, 2023 Plaintiff sent a kite to Health Services, again requesting to see a physician and get an examination, for an evaluation of his medications, to address his issues receiving soft shoes, ankle and knee support braces, and stating his fear that the "damage" to his joints may be "causing lifetime debilitating injuries if not cared for and corrected."

1.40 On June 9, 2023 Plaintiff was given an examination by Defendant Dy as detailed infra (paragraphs 1.80 to 1.88), where his blood pressure medication was adjusted.

1.41 Ultimately, in the first 3 months of his incarceration at the FDC Plaintiff was provided either no or inadequate blood pressure medication, only remedied at this stage with Plaintiff first and only proper sick-call appointment.

1.42 On June 17, 2023 Plaintiff learned that his soft shoes had been rejected because there was not an authorization form on the inside and outside the package.

1.43 On June 22, 2023 Defendant Posalski responded to an informal resolution grievance submitted by Plaintiff earlier that month requesting Plaintiff's full face CPAP mask.

1.44 Defendant Posalski's response to Plaintiff stated that "[we] are currently out of larger size face masks, and they are on with a replacement as soon as they arrive."

1.45 Defendant Posalski did not mention anything about a one-mask policy, by which Plaintiff was denied his full-face mask upon intake, or the need for Plaintiff to turn in his nose mask in order to receive his full-face CPAP mask.

Statement of Facts

1.46 Also on June 22, 2023 Defendant Posalski responded to an informal resolution grievance submitted by Plaintiff earlier that month regarding Plaintiff's request for support braces for his ankle and knee.

1.47 Defendant Posalski's response to Plaintiff stated that "[a] consult was written for an x-ray of your ankle and knee in order the extent of your injuries. A request for medical records has also been sent to the provider indicating no results as of this writing. Until one of those is received and reviewed, you cannot be provided a brace."

1.48 Plaintiff had no control over if or how soon Health Services would schedule him for an x-ray.

1.49 On June 26, 2023, the Unit Counselor provided a new shoe pass to Plaintiff and several other inmates who also had trouble receiving shoes with an approved shoe pass.

1.50 On July 3, 2023 Plaintiff attempted to file an administrative remedy for the CPAP mask issue. He turned it in to Unit Manager Lavatia but she denied it and it was never processed for the stated reason that Health Services was aware of this issue and was waiting for the mask to be restocked.

1.51 On July 7, 2023 Plaintiff sent a kite to Unit Manager Lavatia in which he complained of the lack of responses to his kites and grievances, stating, "your medical system with kytes and email is noneffective and falling directly into the waste bucket. I realize that you're understaffed but these are life threatening."

1.52 On July 21, 2023 Plaintiff sent a kite to Unit Manager Lavatia after hearing that his soft shoes were at the post office where they arrived on July 11, 2023.

1.53 On the same day, Unit Manager Lavatia responded stating "[]your shoes are in the mailroom. I advised medical today and the will be picking it up on Monday.

1.54 Plaintiff received his soft shoes on July 26, 2023.

1.55 On August 10, 2023 Plaintiff suffered an injury while walking the tier in the day room which he felt to be a pinched nerve or muscle sprain and which he felt from his hip to mid-back.

1.56 This injury left Plaintiff bed-ridden for a week, with difficulty breathing when lying down, and Plaintiff needed to borrow a walker from another inmate in order to move around, and with limited mobility in the following months.

1.57 To the best of the Plaintiff's information and belief, this injury was catalyzed by the stress on his joints and back that he had been experiencing and requesting medical care for, and may have had to with his Sciatic nerve.

1.58 On the same day August 10, 2023 Plaintiff filed a hand written sick-call request regarding his injury that he specifically marked as "urgent" and as an "emergency."

Statement of Facts

1.59 Plaintiff followed up the above kite with more hand-written and electronic requests for sick call.

1.60 On August 15, 2023 Plaintiff spoke to the Unit Counselor Smith, whom had spoken to Corrections Officer Martin, in charge of ordering medical supplies, whom informed Unit Counselor Smith that she had not ordered the full-face CPAP mask yet because she had to get a purchase order approved by one of her superiors (presumably Defendant Posalski and/or Defendant Dy).

1.61 On August 16, 2023 Plaintiff sent a kite to Defendant Martin stating he had heard from other officers that she is responsible for stocking medical equipment, and stating "[p]lease do what you can to see if there is a solution to my issue soon…this is an urgent issue."

1.62 On August 23, 2023 Health Services responded to kite nearly 3 months earlier on June 30, 2023 stating "[w]e will schedule you for a sick call."

1.63 Later, on September 12, 2023 Health Services again responded to a kite 3 months old from June 7, 2023 stating "[A] sick call appointment has been scheduled."

1.64 Despite these requests, Plaintiff was never seen for sick-call for this injury in the months he remained at the FDC.

1.65 On September 5, 2023, more than 6 months after Plaintiff arrived at the FDC, Plaintiff received a pass for shipping in a CPAP mask at his expense. The Plaintiff had been approved for the pass on August 29, 2023.

1.66 A third party sent in a mask which was received by the Plaintiff on September 22, 2023. However, the third party sent the wrong mask on accident, another nose mask.

1.67 Plaintiff was sentenced on September 29, 2023.

1.68 Plaintiff was never provided an ankle or knee brace by Health Services up until the time of his sentencing (or after) while at the FDC despite first mentioning the need for them On May 17, 2023, and despite experiencing severe pain daily in both his ankles, knees, hips, and back.

1.69 Plaintiff was not provided x-rays by Health Services by the time of his sentencing (or after) even though x-rays had been unambiguously ordered on June 9, 2023 before Plaintiff was transferred, and referenced by Defendant Posalski in a grievance response shortly after x-rays were ordered.

1.70 Plaintiff was never provided by Health Services with a follow up physician appointment or otherwise sick-call appointment by the time of his sentencing (or after) following his June 9, 2023 appointment with Defendant Dy, beside a brief callout with a nurse that concerned his cholesterol and blood pressure medication, despite continually requesting appointments at that time, and despite an injury

5.5

Statement of Facts

suffered on August 10, 2023 that left him bed-ridden, and requiring the use of an inmate borrowed walker for a period of more than a week, and with longer term limited mobility concerns.

1.71 Building from his initial stress on his right ankle and right knee, over time, both Plaintiff's knees and ankles became affected, as well as his hips and back, which became more strained, thus suffering further avoidable injury.

1.72 Also due to the cumulative lack of care provided in regard to Plaintiff's joints and back, Plaintiff was unable to exercise properly, often feeling unable to do anything beyond basic stretching. As a result of this Plaintiff gained weight which caused more stress on his joints, limited mobility, generally interfered with his daily activities, and compounded with his sleep apnea.

1.73 Due to not having a proper CPAP mask, and not being provided one by Health Services, for his duration at the FDC (up until his sentencing, and after), Plaintiff lost a considerable amount of restful sleep.

1.74 To the best of Plaintiff's information and belief, his health deteriorated from not having a properly functioning CPAP mask while at the FDC. Many nights did not yield any restful sleep at all.

1.75 Over the entire duration of his 7 months at the FDC, Plaintiff had his blood pressure checked a total of 3 times, each detailed above, despite continual requests to have his blood pressure monitored.

1.76 Plaintiff suffered daily mental anguish due to his medical needs being ignored, and the daily physical pain they caused him.


**Defendant Dy, the FDC's Sole Physician**

1.77 Defendant Dy, being the FDC's only Physician, presumably was aware of Plaintiff's requests since his arrival to see a physician for an exam (see, supra, paragraphs 1.16, 1.26, 1.27, 1.79, 1.30, 1.31, 1.36, 1.39), to sign a waiver for access to his previous medical records (see, supra, paragraphs 1.23, 1.30), and his many other kites sent to the Defendant Dy's department that would be relevant to the institution's physician.

1.78 On June 9, 2023 Plaintiff had a medical appointment with Defendant Dy, the physician at the FDC; Plaintiff's first and only exam, after 3 months of requesting to be seen by a physician.

1.79 At this appointment, Defendant Dy did a rudimentary check of Plaintiff's knees by having him move them (extending his legs while seated).

1.80 At this appointment, Defendant Dy told Plaintiff that x-rays for his knees would

Statement of Facts

be ordered.

1.81 At this appointment, Plaintiff signed waivers to access to his previous Canadian medical records.

1.82 At this appointment, Plaintiff mentioned his high blood pressure to Defendant Dy, who performed a blood pressure check on Plaintiff which read 150/90, prescribed double the dose of Amlodipine 10mg per day, and also prescribed Lisinopril at 20mg per day for his blood pressure.

1.83 At this appointment, Plaintiff was told by Defendant Dy that he should be no more than 200lbs, at which time the Plaintiff weighed approximately 265lbs, having gained approximately 15 lbs since his arrival 3 months earlier. Plaintiff reminded Defendant Dy of the barriers to his exercise (footwear, ankle/knee brace, etc.) and his sleep apnea.

1.84 At this appointment, Plaintiff discussed his need for a working CPAP mask.

1.85 At this appointment, Defendant Dy informed Plaintiff that he had high cholesterol and prescribed Xatorvastatin 20mg per day.

1.86 At this appointment, Plaintiff also spoke with Corrections Officer Martin, who was also present, regarding the fact that she was in charge of stocking the medical equipment at the FDC, and about his medical shoes and their whereabouts.

1.87 Shortly after this appointment, Plaintiff began to experience adverse effects from the newly prescribed medication.

1.88 On June 16, 2023 Plaintiff sent a kite to Health Services stating that he was feeling light-headedness and requested info about the side effects from any of the new meds because he didn't know "any of the side effects" from medications as there were no instructions given with them.

1.89 Plaintiff never received a response to the June 16, 2023 kite but stopped taking Xatorvastatin, which he assumed was causing the adverse effects, on June 22, 2023 at his own discretion.

1.90 Plaintiff notified Health Services in several kites at this time, beginning on June 22, 2023 that the medication was causing him problems and he needed replacement medication.

1.91 On June 26, 2023 Plaintiff sent a kite to Health Services regarding the adverse effects from his new medications, stating that he had submitted hand-written kites a few days earlier with no response, and detailed that he had to ask a pill line nurse orally (when, with and without what foods and drinks etc) to take the new medication, and he again requested a sick-call visit and a blood pressure check.

1.92 On June 28, 2023 Plaintiff sent a kite to Health Services again regarding his new medication prescribed by Defendant Dy, stating that he was experiencing "severe

Statement of Facts

chills, feeling lethargic, numbness in hands/fingers aching muscles, light headedness, and blurry vision." He sent a follow up kite 2 days later pertaining to the same issue.

1.93 On July 1, 2023 Plaintiff noticed that nurse Egelston happened to have a blood pressure monitor on her cart and asked to have his blood pressure checked. Plaintiff's blood pressure reading was 155/103.

1.94 On July 19, 2023 Plaintiff was seen by Officer Newland, a Health Services officer who had come in from an out of state facility to temporarily work at the FDC, checked Plaintiff's blood pressure which read 148/88, and provided him with a new prescription medication; Rosuvastatin Calcium 5mg, to be taken once every morning.

1.95 On July 20, 2023 Plaintiff gave Officer Newland the remainder of his Xatorvastatin prescription. Within the next few days, Plaintiff received Rosuvastatin.

1.96 As described supra (paragraphs 1.55 to 1.59), on August 11, 2023, Plaintiff suffered an injury while walking on the walking path in the dayroom.

1.97 On August 11, 2023 Plaintiff sent an electronic kite to Defendant Dy regarding his injury from previous day stating that "the cumulative stress that has been on my back, hips, knees, and joints… It is extremely painful and I can hardly move. I am bed ridden, in pain, and I may need a wheelchair and medication to help with the pain." Plaintiff requested to be "urgently" seen by Defendant Dy, and cited increased trouble breathing.

1.198 As described supra (paragraphs 1.62-63), Plaintiff was never seen for sick-call by Health Services or Defendant Dy in the months he remained at the FDC, despite receiving months old responses to earlier requests notifying him of a scheduled sick-call appointment around this time.

1.99 On September 3, 2023 Plaintiff sent a kite to Defendant Dy regarding her refusal to see him for sick-call and his recent injury, stating that he is "still under a lot of pain" and stating; "I still had not had any type of response at all…why have I not had a sick call scheduled for a severe debilitating injury such as this in four weeks? This is a direct result from your refusing my shoe and orthotic issues as well as my knee and ankle brace requests. Taking 5 months to get a shoe pass and receive the shoes have in turn caused more advanced problems and worsening conditions throughout my knees and now my back." Plaintiff also mentioned he has still not received ankle or knee support braces or an x-ray, and he again requested a sick-call.

1.100 As described supra (paragraphs 1.68 to 1.72) Plaintiff was never provided an ankle or knee brace by the time of his sentencing (or after), even though x-rays for

5.8

**Statement of Facts**

his knee were ordered by Defendant Dy on June 9, 2023 , or a CPAP mask (only approving for a pass for Plaintiff to have one in, dependent on Plaintiff's financial expense and third party volition, 6 months after Plaintiff's mask was confiscated).

1.101 Plaintiff was never provided by Health Services with a follow up appointment or sick-call appointment, generally, in the next 4 months up until his sentencing (or after) following his June 9, 2023 appointment with Defendant Dy, beside a brief callout with a nurse that concerned his cholesterol and blood pressure medication, despite continually requesting appointments at that time, and despite an injury suffered on August 10, 2023 that left him bed-ridden, and requiring the use of an inmate borrowed walker for a period of more than a week, and with longer term limited mobility concerns, and despite that he submitted immediate urgent sick-call requests, including requests directly to Defendant Dy.

1.102 Plaintiff suffered daily mental anguish due to his medical needs being ignored, and the daily physical pain they caused him.

**Defendant Barron, the FDC's Warden**

1.103 To the best of Plaintiff's information and belief, Defendant Barron became Warden at FDC SeaTac sometime around March, 2022.

1.104 Systemic issues and understaffing at the FDC garnered major media attention in January, 2023. A Seattle Times article, published only 2 months after Plaintiff was transferred from the FDC, reported: "[m]edical unit vacancies have resulted in delayed treatment," said regional Federal Public Defender Colin Fieman." (Seatac Federal Jail struggles with 50% vacancy rates for key positions, Nina Shapiro, the Seattle Times).

1.105 Another article published by the same journalist less than 2 months later describes the systemic failure of FDC SeaTac's Health Services. The article highlights Christopher Frick who was released on a medical bond pretrial in December, 2022. In regards to this case, Judge Richard Jones is quoted in the article of noting a "complete absence of any specific care and treatment." (SeaTac federal detainees grow desperate amid lack of medical care, Nina Shapiro, the Seattle Times).

1.106 The article also details the experiences of other inmates around this time who were refused access to a physician for an extended number of months and were later found to have developed cancer or other serious conditions in which early detection is of great importance.

1.107 Defendant Barron was the Warden at the time of Frick's release on medical bond and was aware, or should have been aware, of the systemic deficiencies with Health

Statement of Facts

Services, and general understaffing, at FDC SeaTac, 3 months before Plaintiff
Hollaus' arrival. 1.108 On July 27, 2023 Plaintiff received a response to an
administrative remedy from Defendant Barron regarding his requests for ankle and knee
support braces.

1.109 In Defendant Barron's response, he repeated Defendant Posalski's previous
response stating that "[u]ntil we receive verification that an ankle and knee brace
are needed [from previous medical records or an x-ray] we cannot provide you with a
brace."

1.110 As described supra (paragraphs 1.55 to 1.59), on August 11, 2023, Plaintiff
suffered an injury while walking on the walking path in the dayroom, arising from the
cumulative stress on his joints, and was not provided with access to sick-call or a
physician after urgently requesting to be seen.

1.111 As described supra (paragraph 1.68 to 1.72), Plaintiff never received x-rays by
the time of his sentencing (or after) months he was at the FDC, and was never seen by
sick-call despite the Health Services informing him he was scheduled for sick call in
around that time (supra, paragraphs 1.62 to 1.63).

1.112 On August 3, 2023 Plaintiff sent a kite to Defendant Barron regarding his
attempt to obtain a full-face CPAP mask, stating that he has been "losing sleep and
my health is deteriorating because of it. I am hardly able to fall asleep at
all . . . Please, if you are willing, help stock masks through the right staff
members."

1.113 On August 7, 2023 Defendant Barron responded to the above kite stating that
"Communication has been made with the Health Services Administrator in order to
address your concern accordingly."

1.114 The FDC never provided a CPAP mask to Plaintiff, but did provide a pass for
Plaintiff to provide one and ship through a third party at his own expense, notifying
Plaintiff on September 5, 2023.

1.115 Plaintiff heard staff complain numerous times throughout his period of
confinement at the FDC that they were "understaffed."

1.116 Plaintiff observed many other inmates at the FDC also suffer from inadequate
sick-call procedures, including but not limited to Tomas Carver, Ronnie Griffin, and
Michael Slocumb.

**Defendant Barron's Pattern of Acquiescence (Mere Referral) Regarding Systemic Issues**

5.10

Statement of Facts

1.117 There exists a pattern of inmates suffering from systemic issues with medical care at the FDC and Defendant Barron being aware of these issues, not acting in response to them, or acquiescing to courses of action by his subordinates that he knew or should have known would inflict injury.

1.118 The following facts are examples of Defendant Barron being informed by other FDC inmates of their untreated medical needs, and their inability to properly grieve their medical needs, where the Warden responds to the inmate that he has referred the issue to a subordinate, but without results or relief for the medical needs or administrative issues.

1.119 On May 7, 2023 FDC inmate Ronnie Griffin wrote a kite to Defendant Barron about his dislocated shoulder and his heart issues in which Defendant Barron responded by stating that "[c]ommunication has been made with the Acting Health Services Administrator in order to address your concern accordingly." In the approximately 20 months inmate Griffin remained at the FDC, he never received substantive care for these medical issues. Defendant Posalski later, on June 22, 2023, responded to an informal administrative remedy requests by Griffin by claiming that Health Services had no previous knowledge of his issues despite Defendant Barron claiming that communication had been made to him.

1.120 On November 9, 2023, FDC inmate Thomas Carver sent a kite to Warden Barron regarding his congestive heart failure, and that he had not received any responses to administrative remedy requests, and later followed up with a kite on November 21, 2023 after there had been no response to the first, and after speaking to Defendant Barron in person on these issues. Defendant Barron responded to the kite on November 26, 2023 directing Carver to consult with his Unit Manager about his administrative remedy issues. In the remaining 16 months Carver was at the FDC, he attempted to grieve his congestive heart failure again without response, and only received outside care appointments when granted a medical furlough by this Court, and then later only in the presence of pending medical furlough litigation pressure.

1.121 On February 18, 2024 FDC inmate Gregory Robertson sent a kite to Defendant Barron regarding his liver issues, his seizure medication issues, that he had had a stroke 5 months prior shortly before transferring to the FDC and had still not seen a neurologist, and that he had attempted to proceed with the administrative remedy program on each issue but without any response from the FDC. Warden Barron responded to this kite 2 days later by stating that "[c]ommunication has been made with the Acting Unit Manager" regarding his grievances. In the following several months Robertson remained at the FDC, he never received a response to his grievances, never

5.11

**Statement of Facts**

saw a neurologist while at the FDC, and otherwise did not receive substantive care for his issues.

1.122 On October 15, 2023 FDC inmate Elvin Williams sent a kite to Warden Barron in regards to Williams' need for physical therapy for his broken hand and the lack of response from FDC staff to administrative remedy attempts, stating "I submitted a BP-8 for care for my broken hand on 9/26/23 and I still have not had a response." Warden Barron responded by stating that "[t]ypically, a response to a BP8 is within 7 calendar days."

1.123 3 months later, on January 28, 2024, inmate Williams sent another kite to Warden Barron stating that his initial grievance was still not responded to, and that 3 weeks prior he had filed a second grievance on the same issue that he had still not received a response for. Warden Barron responded 3 days later, only relevantly stating that "[y]our concern is noted."

1.124 On April 9, 2024 FDC inmate Ryan Townsend sent a kite to Defendant Barron for his own medical needs regarding his ankle in need of surgery, and was scheduled for surgery before his arrest, stating that "the only response I have received is that I was put on the call out but its been almost 6 months I've been waiting for the call out." In the remaining several months that he was at the FDC, no substantive care was provided for Townsend's issue. After arriving at his next facility, Sheridan FCI, the physician there recommended him bone fusion surgery.

1.125 Defendant Barron was aware, or should have been aware of the ongoing failures of Health Services.

1.126 Defendant Barron was aware, or should have been aware, of the ineffectiveness of merely making a referral to his subordinates in regards to the serious medical needs of the inmate population.

**Claims of Relief**

1.128 The failure of Defendant Posalski as AHSA to provide Plaintiff with a full-face mask for his CPAP machine in the nearly 7 months Plaintiff was at the FDC as a pretrial detainee (or in the approximately 5 weeks following until his transfer), and delaying 6 months to provide a pass to have a mask sent in, while holding the responsibility of ensuring that inmates were provided with proper medical care, and despite having the ability to approve the purchase of such a CPAP mask but refusing to, and despite being aware that Plaintiff's nose mask was inadequate constituted deliberate indifference to Plaintiff's serious medical needs in violation of the 14th Amendment.

1.129 The failure of Defendant Posalski, as AHSA, to provide Plaintiff with an ankle and/or knee support brace, provide an x-ray for this issue in the near 5 months between when Health Services ordered an x-ray as a pre-requisite to receiving a brace and Plaintiff's sentencing (or after), in there being a significant delay in providing orthotics and a soft shoe pass, and to generally provide timely care which could have prevented the further deterioration of the health and injury to the Plaintiff and back, despite his awareness of Plaintiff's requests and condition constituted deliberate indifference to Plaintiff's serious medical needs in violation of the 14th Amendment.

1.130 The failure of Defendant Posalski, as AHSA, to ensure that Plaintiff was provided with adequate medication without delay or extended lapses of unavailability, and that Plaintiff's medication needs were responded to promptly constituted deliberate indifference to Plaintiff's serious medical needs in violation of the 14th Amendment.

1.131 The failure of Posalski, as AHSA, to ensure that the FDC had adequate sick-call procedures, and adequate medical screening at intake(R&D), and thus to ensure Plaintiff's access to adequate medical care, and that emergency sick-call requests are responded to promptly, or in allowing a 3 month delay for Plaintiff to even sign a waiver for access to his medical records despite his immediate requests to do so constituted deliberate indifference to Plaintiff's serious medical needs in violation of the 14th Amendment.

1.132 The failure of Defendant Dy to prioritize or make urgent the provision of a full-face mask to Plaintiff for his CPAP machine in the 8 months Plaintiff was at the FDC while she was the only full-time physician, and was aware throughout that time Plaintiff's nose mask was inadequate, and despite having the ability to approve or encourage the purchase of such a mask, constituted deliberate indifference to Plaintiff's serious medical needs in violation of the 14th Amendment.

1.133 The failure of Defendant Dy to prioritize or make urgent the provision to

**Claims of Relief**

Plaintiff of ankle and/or knee support braces for since Plaintiff had placed Health Services on notice for this issue nearly 6 months before being transferred from the FDC, and to schedule and see to an x-ray which Defendant Dy ordered for Plaintiff 5 months before Plaintiff transferred from the FDC, all of which resulted in the further deterioration of health, pain, and injury to Plaintiff, despite her awareness to Plaintiff's condition and requests, including his direct pleading to her for help, constituted deliberate indifference to Plaintiff's serious medical needs in violation of the 14th Amendment.

1.134 The failure of Defendant Dy to see Plaintiff for sick-call or allow him to sign a waiver for access to his medical records for the first 3 months following his arrival until their June 9, 2023 appointment despite numerous requests to Health Services made in that time by Plaintiff in which he requested to see a doctor regarding his conditions, including his issues with prescribed medications which were prescribed to him without a physical examination, or even once in the remaining 5 months that Plaintiff was at the FDC, despite his numerous requests for a follow up appointment regarding his conditions, including emergency requests for sick-call to Health Services and to Defendant Dy directly following a debilitating physical injury, and regarding adverse side effects from medication that was prescribed to Plaintiff by Defendant Dy, constituted deliberate indifference to Plaintiff's serious medical needs in violation of the 14th Amendment.

1.135 Defendant Barron knew or reasonably should have known that FDC SeaTac was plagued with systemic deficiencies of medical care, including sick call procedures, and he knew or reasonably should have known, based on ample documented experience, that merely referring Plaintiff's grievances to his subordinates would not have an substantive effect, and therefore constitutes inaction in the supervision and control of his subordinates, in his refusal to make adjustments to courses of actions by his subordinates, including customs of not allowing inmates access to sick-call and not providing needed medical equipment, that he therefore knew, or reasonably should have known, would cause said subordinates to inflict constitutional injury, thereby acquiescing and condoning such courses of action and customs, and thus constituting reckless, callous, and deliberate indifference to Plaintiff's serious medical needs in violation of the 14th amendment.

1.136 As a result of the Defendant's violations of Plaintiff's constitutional right to medical care, Plaintiff suffered physical and emotional pain and injury, and increased risks to complications such as Coronary Artery Disease, Hypertrophic Cardiomyopathy, and obesity related complications.

## COUNT II

*Identify the second right you believe was violated and by whom:*

2.1 Within the time between his sentencing, September 29, 2023, and his transfer from the FDC, approximately November 8, 2023, Plaintiff's Eighth Amendment right to medical care as a federal prisoner was violated by Defendants Posalski, Dy, and Barron.

*State the facts of your second claim below. Include all the facts you consider important. Be specific about dates, times, locations, and the names of the people involved. Describe exactly what each specific defendant did or failed to do that caused you injury or violated your rights, and include any other facts that show why you believe what happened was wrong. If you need additional space, you may attach extra sheets.*

2.2 Plaintiff's Eighth Amendment claim against the defendants is a continuation of Plaintiff's Fourteenth Amendment claim, based in the continued lack of medical care and inaction following his pretrial period and until his transfer from the FDC, and is claimed within that context.

**Defendant Posalski**

2.3 In the time from Plaintiff's sentencing until his transfer from the FDC, Defendant Posalski remained the FDC's Acting Health Services Administrator.

2.4 In this time, Plaintiff did not receive an x-ray (despite having x-rays ordered on June 9, 2023), ankle or knee braces, or any care whatsoever regarding his joints, and was not seen by sick-call despite Health Services informing him that he was scheduled for a sick-call in a kite response on August 23, 2023, despite Plaintiff requesting sick-call since shortly after his only physician's appointment on June 9, 2023, and despite a debilitating injury suffered by Plaintiff on August 10, 2023 caused by the stress on his joints.

**Defendant Dy**

2.5 In the time from Plaintiff's sentencing until his transfer from the FDC,

Defendant Dy remained the FDC's sole physician.

(Continued on page 7.1).

*State with specificity the injury, harm, or damages you believe you suffered as a result of the events you described above in Count II. Continue to number your paragraphs.*

2.11 Plaintiff's right to medical care as convicted federal prisoner confined at

the FDC, between the date of his sentencing, September 29, 2023, and the date of

his transfer, approximately November 8, 2023, was constitutionally protected under

the 8th Amendment's protection against cruel and unusual punishment.

(Continued on page 7.2).

## COUNT III

*Identify the third right you believe was violated and by whom:*

3.1

*State the facts of your third claim below. Include all the facts you consider important. Be specific about dates, times, locations, and the names of the people involved. Describe exactly what each specific defendant did or failed to do that caused you injury or violated your rights, and include any other facts that show why you believe what happened was wrong. If you need additional space, you may attach extra sheets.*

3.2

**Statement of Facts**

2.6 In this time, Plaintiff did not receive an x-ray (despite having x-rays ordered by Defendant Dy on June 9, 2023), ankle or knee braces, or any care whatsoever regarding his joints, and was not seen by sick-call despite Health Services informing he was scheduled for a sick-call in a kite response on August 23, 2023, despite Plaintiff requesting sick-call since shortly after his only physician's appointment on June 9, 2023, and despite a debilitating injury suffered by Plaintiff on August 10, 2023 caused by the stress on his joints, and despite Plaintiff sending a request to Defendant Dy directly to be urgently seen by sick-call the day after the injury.

**Defendant Barron**

2.7 In the time from Plaintiff's sentencing until his transfer from the FDC, Defendant Barron remained the FDC's Warden.

2.8 In this time, Plaintiff did not receive an x-ray (despite having x-rays ordered on June 9, 2023), ankle or knee braces, or any care whatsoever regarding his joints, and was not seen by sick-call despite Health Services informing he was scheduled for a sick-call in a kite response on August 23, 2023, despite Plaintiff requesting sick-call since shortly after his only physician's appointment on June 9, 2023, and despite a debilitating injury suffered by Plaintiff on August 10, 2023 caused by the stress on his joints, and despite Plaintiff sending a request to be urgently seen by sick-call the day after the injury.

2.9 As detailed supra (paragraphs [XX]), knew or should have known of the systemic issues plaguing FDC Health Services, and the FDC in general.

2.10 In this time, Defendant Barron knew of these issues, and knew, or reasonably should have known, that his simple referral to Defendant Posalski and Health Services was inadequate to ensure Plaintiff was going to receive x-rays, and Defendant Barron knew, or reasonably should have known that Plaintiff being seen by sick-call, without further action on his behalf, was highly unlikely.

7.1

Claims of Relief

2.12 The failure of Defendant Posalski, as AHSA, to provide Plaintiff in this time
with an ankle and/or knee support brace, provide an x-ray for this issue in his 5
weeks as a federal prisoner at the, following a near 4 month delay as pretrial
inmate, when Health Services ordered an x-ray as a pre-requisite to receiving a
brace, despite his awareness of Plaintiff's requests and condition constituted
deliberate indifference to Plaintiff's serious medical needs in violation of the 8th
Amendment.

2.13 The failure of Posalski, as AHSA, to ensure that the FDC had adequate sick-call
procedures, and thus to ensure Plaintiff access to adequate medical care, and that
emergency sick-call requests are responded to promptly, constituted deliberate
indifference to Plaintiff's serious medical needs in violation of the 8th Amendment.

2.14 The failure of Defendant Dy, during Plaintiff's confinement as a convicted
prisoner, to prioritize or make urgent the provision to Plaintiff of ankle and/or
knee support braces even though Plaintiff had placed Health Services on notice for
this issue nearly 6 months before being transferred from the FDC, and to schedule and
see to an x-ray which Defendant Dy ordered for Plaintiff 5 months before Plaintiff
transferred from the FDC, all of which resulted in the further deterioration of
health, pain, and injury to Plaintiff, despite her awareness to Plaintiff's condition
and requests, including his direct pleading to her for help, constituted deliberate
indifference to Plaintiff's serious medical needs in violation of the 8th Amendment.

2.15 The failure of Defendant Dy during Plaintiff's confinement as a convicted
prisoner, to see Plaintiff for sick-call, despite having yet to provide a follow up
appointment to his June 9, 2023 appointment despite his numerous requests regarding
his conditions, including emergency requests for sick-call to Health Services and to
Defendant Dy directly following a debilitating physical injury, constituted
deliberate indifference to Plaintiff's serious medical needs in violation of the 8th
Amendment.

2.16 Defendant Barron knew or reasonably should have known during Plaintiff's
confinement as a convicted prisoner, that FDC SeaTac was plagued with systemic
deficiencies of medical care, including sick call procedures, and he knew or
reasonably should have known, based on ample documented experience, that merely
referring Plaintiff's grievances to his subordinates would not have a substantive
effect, and therefore constitutes inaction in the supervision and control of his
subordinates, in his refusal to make adjustments during this time to courses of
actions by his subordinates, including customs of not allowing inmates access to
sick-call and not providing needed medical equipment, that he therefore knew, or
reasonably should have known, would cause said subordinates to inflict constitutional

7.2

**Claims of Relief**

injury, thereby acquiescing and condoning such courses of action and customs,  and
thus constituting reckless, callous, and deliberate indifference to Plaintiff's
serious medical needs in violation of the 8th amendment.

7.3

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

*State with specificity the <u>injury, harm, or damages</u> you believe you suffered as a result of the events you described above in Count III.  Continue to number your paragraphs.*

_____

_____

_____

_____

Page 8 of 9

## IV.   RELIEF

*State exactly what you want the Court to do for you.  For example, you may be seeking money damages from an individual defendant, you may want the Court to order a defendant to do something or to stop doing something, or you may want both kinds of relief.  Make no legal arguments.  Cite no cases or statutes.*

WHEREFORE, Plaintiff requests that this Court grant the following relief:

A. Declare that Defendants Posalski, Dy, and Barron violated Plaintiff's 8th and 14th Amendment right to medical care.
B. Award compensatory damages jointly and severally against each Defendant for Plaintiff's physical and emotional injuries.
C. Award punitive damages against each defendant.
D. Grant Plaintiff such other relief as it may appear Plaintiff is entitled to.

## V.   SIGNATURE

*By signing this complaint, you represent to the Court that you believe the facts alleged to be true to the best of your knowledge, that you believe those facts show a violation of law, and that you are not filing this complaint to harass another person or for any other improper purpose.*

5/25/2025

Dated

Plaintiff's Signature

Clerk,

Here is the amended complaint for Case No. 2:25-cv-00268-KKE-GJL.

```
────────FILED        ────────ENTERED
────────LODGED    ────────RECEIVED

        JUN 0 2 2025    MH

              AT SEATTLE
          CLERK U.S. DISTRICT COURT
      WESTERN DISTRICT OF WASHINGTON
BY                                    DEPUTY
```