UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

_____ FILED      _____ ENTERED
_____ LODGED    _____ RECEIVED

MAY 0 7 2026    LS

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                          DEPUTY

WAYNE HOLLAUS,

      Plaintiff,

      v.

KEVIN POSALSKI, et al.,

      Defendants.

CASE NO. 2:25-cv-00268-JHC-GJL

PLAINTIFF'S OPPOSITION TO DEFENDANTS POSALSKI AND BARRON'S MOTION TO DISMISS AMENDED COMPLAINT (Dkt. 36)

## I. INTRODUCTION

1. Defendants ask this Court to dismiss every claim against them based on a single rhetorical move: that Plaintiff Wayne Hollaus's decision to plead the Fourteenth Amendment is a "mistake" and that his claims should be "treated" as Fifth Amendment claims for purposes of the motion. Dkt. 36 at 2 n.2.

2. From this premise, Defendants build their entire *Bivens* argument, asserting that *Stanard v. Dy*, 88 F.4th 811 (9th Cir. 2023), forecloses any damages remedy for a federal pretrial detainee's medical-care claim. The premise is wrong in regards to both Plaintiff's claim and controlling law.

3. Plaintiff, thus, respectfully opposes Defendants Posalski and Barron's Motion to Dismiss Amended Complaint (Dkt. 36). The

1

First Amended Complaint ("FAC," Dkt. 9) states plausible *Bivens* claims for deliberate indifference to serious medical needs. Defendants' Motion fails under controlling Supreme Court and Ninth Circuit precedent. Plaintiff's Fourteenth Amendment Due Process pleading is not a mistake; the claims are squarely protected by *Bell v. Wolfish* and the *Castro/Gordon* Fourteenth Amendment objective framework. *Stanard v. Dy* is distinguishable and does not control. Barron's supervisory liability is stronger than that upheld in *Starr v. Baca*. Qualified immunity does not apply.

## II. STATEMENT OF FACTS

4. The FAC details repeated, documented requests to Posalski and Barron: (1) confiscation and months-long denial of a full-face CPAP mask for severe sleep apnea (Dkt. 9, paragraphs 1.2-1.6, 1.21, 1.36, 1.43-1.45, 1.73-1.74); (2) soft shoes/orthotics for plantar fasciitis causing constant pain, swelling, and a serious August 10, 2023 injury requiring a walker (Id., paragraphs 1.22, 1.32-1.37, 1.52-1.54, 1.71-1.72); (3) ankle/knee braces and ordered x-rays despite severe daily pain (Id., paragraphs 1.34, 1.39, 1.46-1.47, 1.68-1.69); (4) blood-pressure medication adjustments and monitoring (Id., paragraphs 1.27, 1.75, 1.82, 1.93-1.95); and (5) complete failure to

provide sick-call appointments despite urgent post-injury requests (Id., paragraphs 1.58-1.64, 1.97-1.99).

5.   These caused documented harm: sleep deprivation, exacerbated joint/back injury, uncontrolled hypertension, weight gain, and mental anguish.

6.   Posalski and Barron personally responded to grievances, showing actual knowledge. Barron received direct grievances, oversaw the facility during a period of well documented systemic failures arising from major media attention (Id., paragraphs 1.103-1.107), and a pattern of inmate suffering (Id., paragraphs 1.117-1.135).

## III. LEGAL STANDARD

7.   On a motion under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678.

8.   The complaint need only state a claim that is "plausible on its face." Id. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

9.   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678.

10. Pro se pleadings are construed liberally and held to less stringent standards than pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); see *Stanard*, 88 F.4th at 812 n.4 (applying liberal-construction rule to pro se *Bivens* complaint).

## IV. ARGUMENT

### A. *Bivens* Remedy Exists: Claims Are Governed by *Bell v. Wolfish*'s Due Process Framework and The Ninth Circuit's *Castro/Gordon* Objective Standard Which *Stanard* Does Not Override, and Administrative Remedies Do Not Preclude

11. Plaintiff's claims arise under the Due Process Clause as articulated in the foundational Supreme Court precedent *Bell v. Wolfish*, which directly governs pretrial detainees at federal facilities like FDC SeaTac.

12. The Court held: "The Court of Appeals properly relied on the Due Process Clause, rather than the Eighth Amendment, in considering the claims of pretrial detainees. Due process requires that a pretrial detainee not be punished. A sentenced inmate, on the other hand, may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment." *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979).

4

13.   A restriction or condition violates Due Process if it is "not reasonably related to a legitimate governmental objective" or is "arbitrary or purposeless." Id. at 539.

14.   The FAC properly pleads this exact violation through the arbitrary, months-long denial of medically necessary care that inflicted gratuitous suffering.

15.   This is not a "new *Bivens* context." *Bell* itself involved federal pretrial detainees at a BOP facility and recognized a core Due Process right to be free from punitive conditions/medical indifference.

16.   The Ninth Circuit's binding framework for pretrial detainee medical/conditions claims—objective unreasonableness under the Fourteenth Amendment Due Process Clause—further confirms the claim fits an established context. See *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc) (clarifying post-*Kingsley v. Hendrickson*, 576 U.S. 389 (2015), that pretrial detainees "cannot be punished at all" and applying objective deliberate-indifference standards); *Gordon v. County of Orange*, 888 F.3d 1118 (9th Cir. 2018) (extending *Castro*'s objective standard to pretrial medical-care claims); Ninth Circuit Model Jury Instruction 9.34 (expressly for "Pretrial Detainee's Claim re Conditions of Confinement/Medical Care" under the Fourteenth Amendment).

17.  The Fourteenth Amendment reference is therefore not a mistake and states a cognizable Due Process claim supported by substantial precedent.

18.  Defendants misuse *Stanard v. Dy*, 88 F.4th 811 (9th Cir. 2023) (same facility). *Stanard* addressed a narrow Fifth Amendment disparate-treatment claim alleging denial of Hep C treatment under a BOP policy that prioritized post-sentencing inmates; not a general substantive Due Process "no punishment" medical deliberate indifference claim under *Bell*. *Stanard*, 88 F.4th at 818.

19.  Critically, the *Stanard* opinion never cites or discusses *Bell*, nor *Castro* or *Gordon*, and did not analyze the punitive-conditions standard. It addressed only whether *Bivens* applies for that specific theory.

20.  By contrast, *Stanard* permitted the post-sentencing Eighth Amendment medical-indifference claim to proceed as a direct "replay" of *Carlson v. Green*, 446 U.S. 14 (1980) ("[d]elaying treatment is an established example of deliberate indifference"). Id. at 817.

21.  *Stanard* does not overrule *Castro* (en banc) or *Gordon*, which govern the substantive objective standard for pretrial Due Process claims.

22.   No published Ninth Circuit *Bivens* decision holds that a core *Bell*-type substantive Due Process medical claim framed under *Castro/Gordon* is a new context.

23.   Applying *Stanard* here as Defendants urge would improperly override *Bell* (Supreme Court precedent that *Stanard* could not— and did not—disturb) and *Castro*.

24.   Plaintiff's continuous and identical course of deliberate indifference by the same defendants across the sentencing date renders the claims factually indistinguishable from *Carlson v. Green* and reinforces that no new *Bivens* context is presented.

25.   Finally, Defendants' invocation of the BOP Administrative Remedy Program (ARP) is misplaced. Because Hollaus's claims arise in an existing *Bivens* context under *Bell*, framed under the *Castro/Gordon* objective standard, and *Carlson*, the special-factors analysis is never reached. See *Stanard* v. Dy, 88 F.4th 811, 815 (9th Cir. 2023) ("If the answer to [the new-context] question is 'no,' then no further analysis is required."); *Ioane v. Hodges*, 939 F.3d 945, 952 n.4 (9th Cir. 2018).

26.   Moreover, the cases Defendants cite do not involve claims of deliberate indifference to serious medical needs of the kind alleged here. See *Goldey v. Fields*, 606 U.S. 942 (2025) (excessive force); *Marquez v. Rodriguez*, 81 F.4th 1027 (9th Cir. 2023) (failure to protect).

27.    Even in *Stanard* itself, the ARP was invoked only to dismiss the plaintiff's separate Fifth Amendment disparate-treatment theory; the Eighth Amendment medical-indifference claim was permitted to proceed as a direct "replay" of *Carlson*. 88 F.4th at 817-18. *Bivens* applies.

### B. Barron Is Liable For Supervisory Deliberate Indifference – Plaintiff's Allegations Are Stronger Than Those Upheld In *Starr v. Baca*

28.    Defendants devote several pages of their Motion to the proposition that Warden Barron cannot be liable on a "supervisory" theory because *Iqbal* forecloses respondeat superior. Dkt. 36 at 14-15.

29.    That is a strawman. Plaintiff does not invoke respondeat superior. He invokes the rule of *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011), under which a supervisor is liable in his individual capacity for his own culpable action or inaction. Id. at 1207.

30.    Even under *Iqbal*, a supervisor is liable for his "own culpable action or inaction." *Starr*, 652 F.3d at 1207.

31.    The Ninth Circuit reversed dismissal of the sheriff's supervisory claim, holding:

8

"Starr's complaint specifically alleges numerous incidents in which inmates … have been killed or injured because of the culpable actions of the subordinates of Sheriff Baca. The complaint specifically alleges that Sheriff Baca was given notice of all of these incidents," as well as reports of systemic problems … "Finally, [the complaint] alleges that Sheriff Baca did not take action to protect inmates under his care despite the dangers … caused by his subordinates, of which he had been made aware. These allegations are neither 'bald' nor 'conclusory.'"

*Starr*, 652 F.3d at 1208-09 (reversing dismissal).

32. A supervisor's "acquiescence in the constitutional deprivations" or "failure to act" in the face of known risks suffices. Id. at 1207 (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).

33. Plaintiff's allegations against Barron are stronger than those in *Starr*. The FAC does not allege a freestanding incident involving Hollaus alone.

34. Instead, Hollaus is one documented data point in a sustained pattern of identical systemic medical failures at FDC SeaTac, of which Barron had actual, personal knowledge. Dkt. 9, paragraphs 1.117-1.125.

35. The FAC alleges: (1) specific personal grievances directed to Barron on the exact issues (CPAP mask, braces) with

9

inadequate bare-referral responses (Id., paragraphs 1.108-1.109, 1.112-1.113); (2) contemporaneous media attention in January and February 2024 on FDC SeaTac's health-services deficiencies and understaffing (covering conduct throughout 2023) during Plaintiff's detention (Id., paragraphs 1.103-1.107); and (3) a pattern of multiple inmates suffering the same untreated conditions, with Barron's repeated awareness and inaction (Id., paragraphs 1.117-1.125, 1.135).

36.   These facts plausibly show Barron's own deliberate indifference through culpable inaction on known, ongoing risks—directly satisfying (and exceeding) *Starr*. Posalski's failures are also attributable via Barron's supervisory role over Health Services.

## C. Defendants Are Not Entitled To Qualified Immunity

37.   To overcome qualified immunity, Plaintiff must show both that the facts alleged state a constitutional violation and that the right was clearly established at the time of the conduct. Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011). The FAC satisfies both prongs.

38.   Defendants' qualified-immunity argument rests on the very Ninth Circuit framework they simultaneously attack in their *Bivens* analysis. They articulate the substantive deliberate-

10

indifference standard by direct reference to *Fraihat v. U.S. Immigration & Customs Enforcement*, 16 F.4th 613, 636 (9th Cir. 2021), which itself rests on *Gordon v. County of Orange*, 888 F.3d 1118 (9th Cir. 2018), which in turn rests on the en banc decision in *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). Dkt. 36 at 12-13.

39. *Castro* is a Fourteenth Amendment Due Process case that supplies the governing objective unreasonableness standard for pretrial detainees' claims of inadequate medical care and conditions of confinement. Defendants cannot invoke *Castro/Gordon/Fraihat* to define the merits while insisting the Fourteenth Amendment is the "wrong" amendment for *Bivens* purposes—the two positions are incompatible.

40. Nothing in *Stanard*—a *Bivens*-availability decision by a three-judge panel—purports to overrule, modify, or displace *Castro*. *Stanard* does not cite *Castro*, *Gordon*, or *Fraihat*.

41. As a matter of binding Ninth Circuit hierarchy, a three-judge panel cannot disturb en banc precedent. See *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc). *Castro* therefore continues to supply the substantive standard, and *Castro* confirms that Plaintiff has stated a viable claim.

42. Under the *Castro/Gordon/Fraihat* framework, a pretrial detainee states a deliberate-indifference claim by alleging: (1) the defendant made an intentional decision with respect to the

11

conditions of confinement; (2) those conditions placed the plaintiff at substantial risk of serious harm; (3) the defendant did not take reasonable available measures to abate that risk even though a reasonable official would have appreciated the high degree of risk involved; and (4) the defendant's failure caused the plaintiff's injuries. *Fraihat*, 16 F.4th at 636 (citing Gordon, 888 F.3d at 1125).

43.  The standard is objective unreasonableness—"more than negligence but less than subjective intent—something akin to reckless disregard." *Gordon*, 888 F.3d at 1125.

44.  Plaintiff's allegations easily satisfy each element as to Posalski. As Acting Health Services Administrator, Posalski personally received and responded to multiple kites and grievances over six months: he acknowledged the full-face CPAP mask shortage (Dkt. 9, paragraphs 1.43-1.44), declined braces pending verification (paragraphs 1.46-1.47), signed the soft-shoe pass (paragraph 1.32), and exercised direct control over Health Services. Although Posalski responded that the facility was out of stock and later issued a pass allowing Plaintiff to order a CPAP mask at his own expense, these responses do not negate the months-long delay in providing medically necessary equipment for a known serious condition.

45.  He was on notice of Plaintiff's severe sleep apnea (32 apneic events per hour) and sinus/allergy issues requiring a

12

full-face mask, plantar fasciitis with swelling and pain, and uncontrolled hypertension. Id. paragraphs 1.2-1.8, 1.21-1.47.

46.  Despite that knowledge, the deficiencies persisted for months. Plaintiff was never seen for sick call despite filing an urgent/emergency sick-call request after his August 10, 2023 injury and following up with numerous additional requests (Id. paragraphs 1.58-1.64, 1.97-1.99, 1.101).

47.  The cumulative result was a debilitating injury on August 10, 2023, that left Plaintiff bedridden and dependent on a borrowed walker. Id. paragraphs 1.55-1.57, 1.70.

48.  These are not "mere scheduling preferences"; they are intentional decisions coupled with failure to take reasonable available measures that caused concrete harm. *Castro*, 833 F.3d at 1071.

49.  Barron's systemic notice and pattern of bare-referral responses further support the claim. As warden, Barron personally received and responded to Plaintiff's grievances on the CPAP mask and ankle/knee brace issues with the same inadequate "communication has been made with the Health Services Administrator" formula he used for other inmates (Dkt. 9, paragraphs 1.108-1.109, 1.112-1.113).

50.  Barron had contemporaneous notice of the same systemic deficiencies through multiple inmate grievances raising identical untreated conditions, through internal staff

13

complaints of understaffing, and through external media attention in January and February 2024 that covered FDC SeaTac's ongoing health-services failures throughout 2023. Id. paragraphs 1.103-1.107, 1.117-1.125, 1.135.

51.  Despite this knowledge, Barron took no corrective action and continued the bare-referral practice that produced no substantive care. These facts plausibly show Barron's own culpable inaction on known, ongoing risks of serious harm. See *Starr v. Baca*, 652 F.3d 1202, 1207-09 (9th Cir. 2011).

52.  The "clearly established" prong is also satisfied. *Castro* (2016), *Gordon* (2018), and *Fraihat*(2021) all pre-date the events at issue (March-November 2023).

53.  The objective deliberate-indifference standard for pretrial detainees was clearly established years before Plaintiff arrived at FDC SeaTac. See also *Roman v. Wolf*, 977 F.3d 935, 943 (9th Cir. 2020).

54.  The foundational rule that prison officials may not deliberately disregard known serious medical needs has been clearly established since *Estelle v. Gamble*, 429 U.S. 97 (1976)— nearly fifty years.

55.  No reasonable official in Posalski's or Barron's position could have believed that months-long, documented inaction on these serious needs—despite repeated urgent requests and known

14

risks—was constitutionally permissible. Qualified immunity therefore does not shield Defendants.

### D. Post-Sentencing Eighth Amendment Claims Survive

56.   Defendants concede that Hollaus's claims for the post-sentencing period (September 29 to November 8, 2023) arise under the Eighth Amendment and fall squarely within the *Bivens* remedy recognized in *Carlson v. Green*, 446 U.S. 14 (1980). Dkt. 36, at 17.

57.   Their only argument is that the FAC contains "no specific allegations" of unconstitutional conduct during that roughly forty-day window. Id. That is incorrect.

58.   Count II expressly alleges that, during "the time from … sentencing until his transfer from the FDC," Posalski remained the Acting Health Services Administrator and Plaintiff still did not receive the x-rays ordered on June 9, 2023, still did not receive ankle or knee braces, still received no joint care, and was never seen for sick call despite Health Services telling him appointments had been scheduled. Dkt. 9, paragraphs 2.3-2.4.

59.   These are not new or isolated events; they are the continuing and identical pattern of deliberate indifference that began pre-sentencing and never abated. See Dkt. 9, paragraphs 1.68, 1.75, 1.111 (no x-rays, no braces, blood pressure checked

15

only three times in seven months, no sick-call despite emergency requests).

60.    These allegations state a classic Eighth Amendment claim under *Carlson*. The constitutional question—whether Posalski's ongoing failure to provide care for conditions he had been on documented notice of for more than six months constitutes subjective deliberate indifference—is a merits issue, not a pleading defect.

61.    See *Stanard v. Dy*, 88 F.4th 811, 817 (9th Cir. 2023) (post-sentencing medical-indifference claims are a direct "replay" of *Carlson*; "[d]elaying treatment is an established example of deliberate indifference to a serious medical need").

62.    The same pattern of inaction continued post-sentencing. The post-sentencing Eighth Amendment claims therefore survive.


## V. CONCLUSION

63.    Defendants' Motion to Dismiss should be denied in full. The FAC states plausible *Bivens* claims that are protected by *Bell v. Wolfish's* Due Process framework (framed under the *Castro/Gordon* objective standard) for the pretrial period and by *Carlson v. Green* for the post-sentencing period. *Stanard v. Dy* is distinguishable and does not control. Qualified immunity does not shield Posalski or Barron, individual claims are adequately

pleaded, and Barron's supervisory liability is stronger than the allegations the Ninth Circuit found sufficient in *Starr v. Baca*.

64.    If the Court identifies any technical deficiency, Plaintiff respectfully requests leave to amend.

Dated this 7th day of May, 2026.

Sincerely and respectfully,

Wayne Hollaus
#47120-510
Federal Correctional Complex
Lompoc II
3901-Klein Blvd
Plaintiff, Pro Se

(signed via authorized third-party clerical assistant Jeffrey
Stephens, as authorized numerous times prior in the docket (Dkt.
37, 49, etc.))

17